**UNITED STATES of America**

v.

**Leroy SORRELL.**

**Crim. No. 76–165.**

United States District Court,
E. D. Pennsylvania.

May 4, 1976.

Robert E. J. Curran, U. S. Atty., Edward S. G. Dennis, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

David A. Garfunkel, Asst. Defender, Defender Assn. of Phila., Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendant has been charged in a two count indictment with unlawful possession of a firearm. He has moved to dismiss the indictment with prejudice. We will grant the motion.

Defendant is now confined in the State Correctional Institution at Graterford (SCIG) serving a sentence of one to ten years imposed by the Court of Common

Pleas of Philadelphia County. On March 26, 1976, defendant was notified that there was a detainer lodged from this district for the present indictment. On April 2, deputy U. S. marshals, pursuant to a writ of habeas corpus ad prosequendum, removed defendant from SCIG and brought him into this court for arraignment. Defendant was then returned to SCIG without having been tried.

On April 19, defendant was again brought into this court for trial by writ of habeas corpus ad prosequendum. However, at the request of his newly appointed counsel, we granted a continuance for one week and defendant was again returned to SCIG. On April 26, when the continued trial was scheduled, defendant filed the present motion.

Defendant argues that a prisoner serving a state sentence can be brought to court to answer a federal charge only by the invocation of the Interstate Agreement on Detainers, 18 U.S.C.App.; 19 P.S. §§ 1431 *et seq.* ("Agreement"). That Agreement, defendant points out, provides two things, *inter alia* : (1) a mandatory period of thirty days within which the governor of the state of confinement may disapprove the request for temporary custody, Agreement, Article IV(a); and (2) unless trial is had on the indictment before the prisoner is returned to his original place of imprisonment, the indictment shall be dismissed with prejudice. Agreement, Article IV(e). Defendant's argument is pitched on the second of these provisions.

■ Preliminarily, we note that as used in the Agreement, the term "State" means, *inter alia,* the United States of America. Agreement, Article II(a). Thus, a transfer of a state inmate to the federal authorities, under the terms of the Agreement, is a transfer from one state to another.

In *United States ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir. 1975), the relator was serving a federal sentence at Danbury, Con-

necticut. On April 21, 1971, he was transferred by writ of habeas corpus ad prosequendum to New Jersey to stand trial. On April 27, 1971, he was returned to Danbury without having been tried. Thereafter, by unspecified procedures, Esola was returned to Monmouth County on June 10, 1971, September 25, 1971, and January 6, 1972 for trial. During the January transfer he was tried and convicted. After exhausting state remedies attacking the validity of his conviction, Esola sought federal habeas corpus. The district court dismissed the petition. On appeal, New Jersey argued, as the government does here, that because the transfers were pursuant to writs of habeas corpus and not under the Agreement, the provisions of the Agreement were not relevant. In rejecting this argument, the court said, at page 837:

" * * * Were we to hold, as New Jersey urges, that the machinery of the Agreement is not the exclusive means of effecting a transfer for the purpose of prosecution on these allegations, then Article IV(c), requiring prosecution within 120 days of arrival, and Article IV(e), allowing for only one rendition, would be meaningless.

*     *     *     *     *     *

"Our holding that the Agreement provides the exclusive means of transfer when it is available was foreshadowed by and is fully consistent with the recent case of *Grant v. Hogan,* 505 F.2d 1220 (3d Cir. 1974)."

■ We see no room for doubt that at least in this circuit, the Agreement is the exclusive method for transfer of a state prisoner to another state (including, under the Agreement, the United States) for any phase of prosecution in the transferee state.[1] Of course, arraignment is an integral part of the prosecution, for without it there can be no trial.

■ The government also argues that the Agreement does not apply where the

---

1. A contrary indication in *United States v. Ricketson,* 498 F.2d 367 (7th Cir. 1974), was rejected in *Esola, supra.* 520 F.2d at 838, n. 23.

federal court seeking transfer is geographically located in the same state as the imprisoning state. The plain answer to this is that Congress could have so provided, but it did not. There is not a single word anywhere in the Agreement that would lend support to such contention. Nor did the Court of Appeals in *Esola* predicate its decision on any such distinction or give any hint that it might be important. For us to write such a term into the Agreement would be the plainest judicial legislation, and we refuse to do so.

■ Our conclusion in this respect is buttressed by the avowed purpose of the Agreement, as explicated in *Esola*, 520 F.2d at pages 836–837:

" * * * The purpose of the provision which this case brings into issue is to minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction. When a prisoner is needlessly shuttled between two jurisdictions, then any meaningful participation in an ongoing treatment program is effectively foreclosed for two reasons. First, participation requires physical presence and the continuous physical presence of a prisoner is not possible when multiple trips to a foreign jurisdiction are made. Secondly, the psychological strain resulting from uncertainty about any future sentence decreases an inmate's desire to take advantage of institutional opportunities."

Admittedly, there may be minimal interruption of the rehabilitative process by a one-day trip from Graterford and return. However, Congress was not dealing with an individual situation, but rather with an agreement of national scope. Suppose the defendant had been imprisoned in Erie, and not Graterford. The interruption there would be far more serious than here. If the defendant were confined on a state charge in Amarillo, Texas and had to be transferred for an indictment pending in Brownsville, Texas, a distance of approximately 700 miles, the disruption there would be far from minimal and could seriously interfere with one of the purposes of the Agreement.

Again, Congress could have written limitations into the Agreement. Again, it did not. And again, it is not for us to legislate. We can only conclude, as the court concluded in *Esola*, "that the Agreement provides the exclusive means of transfer when it is available * * *." 520 F.2d at page 837.

■ Having determined that the Agreement is the exclusive means of transfer, does it follow that Article IV(e) requires dismissal of the indictment with prejudice? We think it does. That section provides:

"If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

■ Defendant was brought to this district for arraignment on April 2. After arraignment he was returned to SCIG without having been tried. It matters not, as we see it, what the purpose of the transfer was. It is the fact of transfer, and not the reason that is important. In *United States v. Ricketson*, 498 F.2d 367 (7th Cir. 1974), the court said, at page 373:

"But there are no exceptions to the requirement that defendant not be returned to state custody untried."

In *Esola*, the court pointed out the adverse effect on the treatment program "[w]hen a prisoner is needlessly shuttled between two jurisdictions * * *." 520 F.2d at page 837. The court concluded that Article IV(e) allows "for only one rendition." *Ibid.*

Were we to exclude from the operation of Article IV(e) transfers for proceedings essential to the prosecutorial process, the entire fabric of Article IV(e) would be in tatters. It is ever important to remember that the Agreement, *vis-a-vis* the United States, is national in character. We cannot deal with it in the context of Graterford to Philadelphia to Graterford. Rather, we must consider, *e. g.*, the background of Sacramento to Philadelphia to Sacramento. To adopt a view that the Agreement adheres

*only* to bring a defendant in for the actual trial itself would make a mockery of the entire scheme. Under such a view, a California state prisoner could be brought to Philadelphia for arraignment, returned to California, brought back for a suppression hearing, returned to California, brought back again for handwriting exemplars, returned to California, and finally brought to Philadelphia a fourth time for trial, which may commence as late as 120 days from the final transcontinental trip. Article IV(c). A construction that would permit such needless shuttling would gut Article IV(e).

The Agreement appears to recognize that transfer may be needed for pretrial proceedings as well as for the trial itself. Article IV(c) permits the retention of temporary custody for as long as four months. There is no discernible reason why a prisoner should languish in the demanding jurisdiction for four months, unless it be to assure his presence for pretrial necessities. One rendition with a maximum duration of 120 days accomplishes this without unnecessary peregrinations. Clearly, unless this be the intent of the Agreement, the 120 days is totally unnecessary.

All of the foregoing considerations lead us to conclude that the Agreement contemplates one transfer for whatever is necessary to consummate the trial. If a defendant is transferred and returned without being tried,[2] the indictment must be dismissed with prejudice.

---

2. Since our conclusion is based upon defendant's return to SCIG following arraignment, we need not and do not consider the effect of his return after his counsel's request for a continuance was granted.