[Crim. No. 34349. Second Dist., Div. Four. Dec. 17, 1979.]

In re JERRY RICHARD BLAKE on Habeas Corpus.

COUNSEL

Stanley M. Roden, District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Appellant.

Glen Mowrer, Jr., Public Defender, and James L. Crowder, Deputy Public Defender, for Petitioner.

OPINION

JEFFERSON (Bernard), J.—This is an appeal by respondent Carpenter throught the District Attorney of the County of Santa Barbara, from an order dismissing a criminal case against petitioner Jerry Richard Blake, pursuant to the provisions of Penal Code section 1389, and ordering petitioner returned to federal custody.[1] The essential question before us on this appeal is that of the appropriate interpretation of the provisions of Penal Code section 1389—commonly referred to as the Interjurisdictional Agreement on Detainers.

The trial judge's order arises out of a letter, dated November 8, 1978, from petitioner, Jerry R. Blake, to the trial judge, and filed with the superior court on November 13, 1978. Treating petitioner's letter as a petition for a writ of habeas corpus, the trial court issued an order to show cause against John W. Carpenter, the Sheriff of the County of Santa Barbara, who had custody of petitioner. The sheriff, with the district attorney representing him, made a return to the order to show cause. Thereafter, a hearing was held which appears to have consisted solely of argument by counsel representing petitioner Blake and a deputy district attorney representing the sheriff. The hearing was held on November 27, 1978. At its conclusion, the court made a minute order granting the habeas corpus petition of Blake and ordering his return to federal custody.

---

[1]The proceeding below began with a petition by Blake for a writ of habeas corpus directed against Carpenter, the Sheriff of Santa Barbara County. Carpenter, through the district attorney, filed a return to the order to show cause issued by the trial court. After the hearing on the order to show cause, the trial court signed a formal order which substituted the People for Carpenter as respondent. We consider the substitution as inadvertent. We consider the appeal as if Carpenter remained the respondent since the notice of appeal carries the same caption with Carpenter listed as respondent and the district attorney acting as his counsel.

On November 28, 1978, the district attorney executed a notice of appeal in which it was stated that the appeal was being taken from the judgment dated November 27, 1978, granting petitioner's petition for a writ of habeas corpus. There is a minute order dated November 27, 1978, but not a judgment. However, on December 4, 1978, the court executed a formal order finding that there had been noncompliance with Penal Code section 1389 in connection with the criminal case of People v. Jerry Blake, numbered 12504, and ordered a dismissal with prejudice of this criminal case and ordered Blake's return to federal custody. Although the appeal from the minute order of November 27 was premature, we treat the appeal as an appeal from the court's formal order executed on December 4, 1978.

I

*A Summary of Necessary Procedural and Factual Background*

On April 4, 1978, a complaint was filed with the Municipal Court for the Santa Barbara-Goleta Judicial District, charging Blake with the commission of a robbery on April 2, 1978. On May 17, 1978, Blake was transferred from custody of federal authorities at the federal correctional institution at Terminal Island in Los Angeles County, to custody of the Sheriff of Santa Barbara County. He was arraigned and his preliminary examination was set for June 2, 1978. At the conclusion of Blake's preliminary examination on June 2, 1978, he was held to answer in the superior court. However, since no information had been filed in the superior court by the People prior to June 19, 1978, the complaint against Blake was dismissed pursuant to Penal Code section 1382, subdivision 1.

On June 14, 1978, before the dismissal of the April 4 complaint, a second complaint was filed charging Blake with the same April 2, 1978, robbery. Blake was arraigned on the new complaint and a new preliminary examination calendared for July 7. On July 7, the People's motion to continue the preliminary examination for a 10-day period was denied, and the magistrate dismissed this complaint.

On July 11, 1978, the People filed in the superior court a petition for a writ of mandamus seeking to set aside the magistrate's July 7 dismissal of the second complaint. On July 20, 1978, Blake filed in the superior court a petition for a writ of habeas corpus challenging the legality of

his continued custody by California state authorities. On July 25, 1978, Blake's petition for writ of habeas corpus was granted and he was ordered released from custody of California authorities and ordered returned to the custody of the federal prison authorities at Terminal Island.

On September 12, 1978, the People's petition for writ of mandate to set aside the magistrate's dismissal of the second complaint was denied as being moot because of *People* v. *Peters*, 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651], decided by the California Supreme Court on July 31, 1978.

On September 19, 1978, the People filed a third felony complaint against Blake, charging him with the same April 2 robbery. On September 29, 1978, Blake was brought back from federal custody at Terminal Island and turned over to the Sheriff of Santa Barbara County for state custody. Blake was arraigned on this third felony complaint and a preliminary examination thereon was held on October 13, 1978. Blake was held to answer, with the arraignment date set in the superior court for November 2, 1978. Blake was arraigned and entered a plea of not guilty. It was this information, filed as a result of the third felony complaint and preliminary examination, that Blake sought to have dismissed in his habeas corpus petition of November 8, 1978.

## II

### *The Issues Presented on Appeal*

Respondent Sheriff Carpenter advances two contentions on this appeal. Both contentions are concerned with the question of what is the appropriate interpretation to be given to Penal Code section 1389—the Interjurisdictional Agreement on Detainers. One contention which is advanced is that the 120-day period for bringing a defendant to trial under Penal Code section 1389 begins to run only with defendant's arrival from federal custody to state custody in connection with a proceeding which results in the filing of an information. The second contention made by Sheriff Carpenter is that Blake's first return from state custody to federal custody, prior to any trial, was the result of Blake's own actions which precludes him from later asserting the fact of this transfer back into federal custody, without having been tried, as a ground for dismissal of the information which was subsequently filed in the trial court.

## III

 *The Question of Whether the 120-day Period, Set*
*Forth in Penal Code Section 1389, Article IV, Subdivision (c),*
*for Commencing a Trial of a Defendant Brought*
*From Prison in Another Jurisdiction to California*
*Begins to Run Only From the Day Such Defendant Arrives*
*in California in Connection With Felony Proceedings*
*Which in Fact Result in an Information Being*
*Filed in the Trial Court*

Penal Code section 1389 constitutes the Interjurisdictional Agreement on Detainers (sometimes hereinafter referred to as the Agreement) which has been enacted by 46 states and the federal government. (See *United States v. Mauro* (1978) 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834, 1838].) A brief review of the provisions of selction 1389 is in order for a proper understanding of the issues raised on this appeal. The Interjurisdictional Agreement is set forth in section 1389 under articles I through IX.[2]

Article I of section 1389 sets forth the general purposes of the Agreement. Article I provides, in part pertinent for our purposes, "that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

Article III, which is not involved in the instant case, establishes the procedure for a person incarcerated in prison in one state to demand that he be brought to trial in any other state within 180 days after he has filed certain designated papers. Articles IV and V are the key provisions of the Agreement with which we are concerned.

Article IV provides that a state in which there is an untried indictment, information or complaint shall be entitiled to have a prisoner in

---

[2]In addition, other provisions not pertinent to our case are set forth in sections 1389.1 through 1389.8

another state made available for trial. Article IV sets forth that, after the state desiring the prisoner for trial has lodged a "detainer" with the prison authorities having custody of the defendant, a written request for temporary custody may then be made to the appropriate state in which the prisoner is incarcerated. Upon receipt of the request for temporary custody, the authorities having the prisoner in custody shall then provide the officials of the state desiring to place the defendant on trial with information regarding the defendant's term of commitment, the time already served, the time remaining to be served and the time of parole eligibility. Under article IV, the filing of the detainer and the request for temporary custody entitles the state with an untried indictment, information or complaint pending against the defendant to obtain temporary custody of the defendant for trial.

A key provision in article IV is subdivision (c) thereof, which provides: "In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Another key provision of article IV is subdivision (e), which provides: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Article V deals with the method of surrendering temporary custody to the requesting jurisdiction. Subdivision (e) of article V provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state."

The district attorney advances the view that the "complaint" part of the language—"an untried indictment, information or complaint" —found in article IV, subdivision (a), of Penal Code section 1389, refers to a misdemeanor complaint upon which there is a trial on the merits, and not a felony complaint upon which there is a preliminary examination leading to a trial on the merits only if an information is subsequently filed. The district attorney concludes, therefore, that the

language of article IV, subdivision (c), that "[i]n respect of any proceeding made possible by this Article [article IV], trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state," must be construed to mean, with respect to a felony charge, a "proceeding" which results in the ultimate filing of an information upon which a defendant is subject to trial on the merits.

If we were to accept the district attorney's interpretation of article IV of Penal Code section 1389, the felony complaints filed April 4, 1978, and June 14, 1978, which were dismissed without any information ever being filed, did not constitute a "proceeding made possible by this Article [article IV]" (art. IV, subd. (c)) to require a trial within 120 days of petitioner Blake's arrival in California on May 17, 1978, in connection with these abortive felony complaints. Under such an interpretation of Penal Code section 1389, article IV, subdivisions (a) and (c), the 120 days for trial began to run only when petitioner Blake was transferred from federal custody to California custody on September 29, 1978, in connection with the third felony complaint which resulted in the filing of an information and Blake's arraignment and plea thereon on November 2, 1978. On this theory, there had been no expiration of 120 days, without trial, from September 29, 1978, to November 13, 1978, when Blake filed his petition for a writ of habeas corpus on the ground that his right to a speedy trial (120 days) under Penal Code section 1389 had been violated.

The district attorney has cited no authority which has interpreted article IV, subdivisions (a) and (c), of Penal Code section 1389 in the manner suggested by the district attorney. Reference is made to *People v. Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651], which interpreted Penal Code sections 1385 and 1387. *Peters* held that Penal Code section 1385 authorized dismissals in furtherance of justice by *trial* courts only, and *not* by magistrates conducting preliminary examinations. Thus, a dismissal of a felony complaint by a magistrate was held to be no bar under Penal Code section 1387[3] to the filing of another felony complaint. But the construction which the *Peters* court placed upon Penal Code sections 1385 and 1387 cannot be deemed per-

---

[3]Penal Code section 1387 provides, in part pertinent for our purposes, that ". . . dismissal of an action pursuant to this chapter is a bar to any other prosecution for the same offense if it is a felony and the action has been previously dismissed pursuant to this chapter, . . ." Penal Code section 1385 provides that "[t]he court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. . . ."

suasive with respect to an interpretation of Penal Code section 1389 which deals with the right of a prisoner incarcerated in one jurisdiction to be brought to a speedy trial in another jurisdiction.

The district attorney places some reliance upon *People* v. *MacDonald* (1973) 36 Cal.App.3d 103 [111 Cal.Rptr. 266] and *People* v. *Godlewski* (1943) 22 Cal.2d 677 [140 P.2d 381]. But this reliance is also without justification as these two cases are inapposite to the case before us. In *MacDonald*, defendants were serving a prison sentence in Maryland. In 1966, California forwarded felony warrants to Maryland to be placed as "detainers" against defendants. Nothing more occurred until 1969, when defendants executed the written notice and request for final disposition (a trial or a dismissal) of their prosecutions pending in California. The issue involved in *MacDonald* was whether, in the absence of a written notice and request by defendants for a final disposition of California charges under Penal Code section 1389, between 1966 and 1969, there was any duty imposed upon California authorities to request temporary custody of the defendants from Maryland authorities for purposes of prosecution.

In *MacDonald*, once defendants executed their notices and requests for final disposition, the California authorities proceeded with due diligence to obtain custody of the defendants and proceed with their prosecution. There was a showing in the trial court that the prosecuting authorities had been negligent in not making efforts to obtain custody of the defendants for trial prior to execution by the defendants of their notices and requests for final disposition of charges. The *MacDonald* court held that failure of California authorities to seek custody of defendants for trial prior to defendants making a written notice and request for disposition of the California charges constituted no violation of the rights of defendants to a speedy trial as set forth in the Sixth Amendment to the federal Constition. The *MacDonald* court did not deal with the rights of a defendant after his custody has been transferred from the state of incarceration to the state where criminal charges are pending—which is the situation presented in the instant case.

The *MacDonald* opinion contains a discussion of the *Godlewski* case. In *Godlewski*, the court made an interpretation of Penal Code section 1381 which requires that a charge against a defendant serving a sentence in California for another offense be tried within 90 days of his

demand that he be brought to trial. In *Godlewski*, a defendant was not brought to trial within 90 days of his demand for trial and the information was dismissed. Following the dismissal, a new information was filed. Defendant sought a dismissal of the new information. The *Godlewski* court interpreted Penal Code section 1381 as permitting the filing of a second information after the dismissal of a first information for failure of the prosecution to bring the matter to trial within 90 days. The court held that Penal Code section 1381 was subject to the provisions of Penal Code section 1387. It followed, therefore, that a dismissal under section 1381, the offense being a felony, was not a bar to another prosecution for the same offense by virtue of Penal Code section 1387.

At the time the *Godlewski* case was decided in 1943, Penal Code section 1387 provided that an order for a dismissal was not a bar to a subsequent prosecution for the same offense if the offense dismissed was a felony. Such a dismissal would be a bar to the prosecution for the same offense only if that offense were a misdemeanor. The *Godlewski* court determined that the effect given to Penal Code section 1381 in light of Penal Code section 1387 did not deprive a defendant of his constitutional right to a speedy trial. It is to be noted that, in *Godlewski*, one of the defendants had not demanded a trial as provided for in Penal Code section 1381. As to that defendant, it was held that it was not unreasonable for Penal Code section 1381 to require a defendant to demand a trial before the 90-day time limit for trial would begin to run.

The *MacDonald* and *Godlewski* cases are similar to *Peters* in that their holdings cannot reasonably be of assistance to an interpretation of the provisions of Penal Code section 1389 which involve a different problem than that presented in *Peters, MacDonald* and *Godlewski*.

Article IV, subdivision (c), of Penal Code section 1389 requires that a trial be commenced within 120 days of a defendant's arrival in the state desiring his temporary custody for trial with respect to "any proceeding made possible by this Article." The "proceeding" referred to is defendant's trial made possible by the provisions of subdivisions (a) and (b) of article IV regarding the transfer of a defendant's custody in connection with "an untried indictment, information, or complaint," which is accomplished by actions of the prosecution authorities of the jurisdiction desiring to place the defendant on trial in lodging a "detainer" with the prison officials of the jurisdiction where the defendant is incarcerated and then presenting a written request for temporary custody.

If the word "complaint," used in article IV, subdivision (a), as a part of the term, "an untried indictment, information or complaint," refers only to a misdemeanor complaint, then article IV makes no provision for a receiving state to secure a defendant's necessary presence for arraignment and preliminary examination on a felony complaint. Under article IV, subdivision (a), the untried "indictment, information or complaint" must be *pending* to entitle the receiving state to have the defendant made available to it by making the request for temporary custody. There is obviously no way for an untried "information" to be *pending* in a state without the prior presence of defendant in that state for arraignment and preliminary examination on a felony complaint having taken place.

■ It seems clear that an untried "complaint," within the meaning of article IV, subdivision (a), refers to either a misdemeanor complaint or a felony complaint that is *pending* in the receiving state desiring temporary custody of defendant for proceedings that involve pretrial matters as well as the trial itself. This interpretation of the term, "complaint," is reinforced by the construction which has been placed on article IV, subdivision (e), which provides that if trial is not conducted by the receiving state on the indictment, information or complaint, prior to the defendant's being *returned* to the original place of imprisonment, the court *shall* dismiss the action against defendant with prejudice.

■ Article IV, subdivision (e), provides for no exceptions. If a receiving state returns a defendant to the sending state at any stage of the prosecution before the trial is concluded, the defendant is entitled to have the action dismissed with prejudice. The Interjurisdictional Agreement on Detainers (Pen. Code, § 1389) makes no provision for any interim return of the defendant to the sending jurisdiction. The Agreement contemplates one transfer of temporary custody, and one such transfer only. Once the receiving state obtains temporary custody of defendant, all prosecution proceedings must be completed before return of the defendant to the sending state, in order for the receiving state to avoid having to dismiss the action with prejudice.

Thus, in *United States* v. *Sorrell* (E.D.Pa. 1976) 413 F.Supp. 138, 140, the court points out that, with respect to an *indictment*, "arraignment is an integral part of the prosecution, for without it there can be no trial." *Sorrell* holds that bringing a state prisoner to the federal court for purposes of arraignment on an indictment is considered to be

part of the proceedings envisioned by the detainer Agreement. Similarly, it would seem to follow that a felony complaint and arraignment thereon and a preliminary examination are all an integral part of a prosecution on an information and within the meaning of "complaint" as an untried charge under the detainer Agreement "for without it [them] there can be no trial." (*Id.* at p. 140.)

An essential part of *Sorrell* is its holding that the production of a defendant from another jurisdiction for purposes of an arraignment on an indictment constitutes a production under the Agreement for all purposes, including trial, and precludes federal authorities, as the receiving jurisdiction, from shuttling a defendant back and forth to the sending jurisdiction with respect to various stages of the prosecution. The *Sorrell* court interpreted article IV, subdivision (e), as providing for no exceptions for returning a defendant to the sending jurisdiction prior to completion of his trial without incurring the result that such defendant would be entitled to a with-prejudice dismissal of the prosecution. The *Sorrell* court makes reference to *United States* v. *Ricketson* (7th Cir. 1974) 498 F.2d 367, 373, in which it was said: "But there are no exceptions to the requirement that defendant not be returned to state custody untried."

The *Sorrell* court concluded its interpretation of article IV, subdivision (e), with the following cogent and penetrating analysis: "Were we to exclude from the operation of Article IV (e) transfers for proceedings essential to the prosecutorial process, the entire fabric of Article IV (e) would be in tatters. It is ever important to remember that the Agreement, *vis-a-vis* the United States, is national in character. We cannot deal with it in the context of Graterford to Philadelphia to Graterford. Rather, we must consider, *e.g.*, the background of Sacramento to Philadelphia to Sacramento. To adopt a view that the Agreement adheres *only* to bring a defendant in for the actual trial itself would make a mockery of the entire scheme. Under such a view, a California state prisoner could be brought to Philadelphia for arraignment, returned to California, brought back for a suppression hearing, returned to California, brought back again for handwriting exemplars, returned to California, and finally brought to Philadelphia a fourth time for trial, which may commence as late as 120 days from the final transcontinental trip. Article IV (c). A construction that would permit such needless shuttling would gut Article IV(e). [¶] The Agreement appears to recognize that transfer may be needed for pretrial proceedings as well as for

the trial itself. Article IV(c) permits the retention of temporary custody for as long as four months. There is no discernible reason why a prisoner should languish in the demanding jurisdiction for four months, unless it be to assure his presence for pretrial necessities. One rendition with a maximum duration of 120 days accomplishes this without unnecessary peregrinations. Clearly, unless this be the intent of the Agreement, the 120 days is totally unnecessary." (*Sorrell, supra,* 413 F.Supp. 138, 141-142.) (Italics in original.)

■ We conclude, therefore, that, when the federal prison officials delivered custody of petitioner Blake to the Sheriff of Santa Barbara County, the 120-day period for starting his trial on the charge of robbery, allegedly committed by him on April 2, 1978, as provided in article IV, subdivision (c), of Penal Code section 1389, began to run on May 17, 1978, the date of the change of Blake's custody from the federal jurisdiction to the state's jurisdiction.

IV

■ *Did Defendant's Successful Petition for a Writ of Habeas Corpus to Secure His Release From State Custody After the Dismissal of the First Two Felony Complaints Constitute a Waiver of His Right Under Penal Code Section 1389, Article IV, to a Trial Beginning Within 120 Days of his First Custody by the Sheriff of Santa Barbara County?*

The district attorney argues that defendant's petition for a writ of habeas corpus, after the dismissal of the first two felony complaints, which resulted in his release from California custody and return to the federal prison officials on July 28, 1978, without being tried on any robbery charges, should be deemed a waiver of his right to be tried within 120 days of his first custody by the Sheriff of Santa Barbara County. No authority is called to our attention to support this view of waiver. At the time petitioner Blake filed his petition for habeas corpus after the second felony complaint had been dismissed, there were no pending charges against him. It is to be noted that no appeal was taken from the trial court's order of July 25, 1978, granting Blake's petition for a writ of habeas corpus and ordering him returned to federal custody. With no charges pending against him, we find no basis for waiver in petitioner Blake's effort to obtain his release from state custody. Since the district

attorney did not see fit to seek a stay of the trial court order pending an appeal in spite of the consequences under article IV, subdivision (e), of Penal Code section 1389, to the prosecution upon Blake's being returned to federal custody before trial, we find no merit in the waiver contention.

V

*The Question of Whether the Case Should Be*
*Remanded to the Trial Court for an Evidentiary Hearing*
*on the Issue of Whether a "Detainer" Was Ever*
*Lodged With the Federal Prison Officials*

In the case at bench, the parties assumed in the proceedings below that California authorities obtained temporary custody of petitioner Blake from the federal prison officials pursuant to the provisions of article IV of Penal Code section 1389. As we have previously pointed out herein, under article IV, unlike article III where a change of custody is initiated by a defendant through written notice and request for final disposition of charges, the change of custody of a defendant from one jurisdiction to another is initiated by the authorities of the jurisdiction desiring temporary custody of a defendant for trial through lodging a "detainer" with the prison officials of the jurisdiction where the defendant is incarcerated, and then presenting a request for his temporary custody.

The district attorney has advanced the view by motion during the pendency of this appeal and, also, on appeal, that the case should be returned to the trial court for a determination of whether the provisions of Penal Code section 1389 are applicable at all to the situation presented in the case at bench. The remand of the case would be for a determination, based upon an evidentiary hearing, of whether California authorities ever filed with the federal prison officials a "detainer" as provided for in article IV, subdivision (a), of Penal Code section 1389.

What is the meaning of the word, "detainer," as used in the Interjurisdictional Agreement on Detainers? In *United States v. Mauro* (1978) 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834], the United States Supreme Court, in interpreting the word "detainer," as used in the Agreement, considered the question of whether a federal writ of habeas corpus *ad prosequendum*, used by the federal courts to secure the pres-

ence in federal courts of state prisoners, may be considered either a "detainer" or a "request for temporary custody" within the meaning of the Agreement. The *Mauro* court held that United States District Courts have been authorized by federal statute (28 U.S.C. § 2241 (c) (5)) to issue writs of habeas corpus *ad prosequendum* necessary to bring a state prisoner into the federal courts for prosecution, and that state authorities are required to recognize such writs.[4] But *Mauro* concluded that the use of such a writ could not be interpreted as a "lodging of a detainer" by federal authorities with state prison authorities within the meaning of the Agreement.

The holding of the *Mauro* court is to the effect that the issuance of such a writ by a federal court, without a prior detainer being lodged with the state prison officials, is action by the federal courts to obtain temporary custody of state prisoners that falls outside of the Agreement on detainers and gives the defendant, brought from a state jurisdiction to the federal court, no right to have a case dismissed for failure of the federal prosecutor to begin defendant's trial within 120 days of defendant's arrival in the federal jurisdiction as required by article IV, subdivision (c) of the Agreement.

However, the *Mauro* court also held that, in the event the federal authorities had filed a detainer with state prison officials and, thereafter, used the writ of habeas corpus *ad prosequendum* to bring the defendant into the federal court, the writ would then be considered the requisite request for temporary custody, giving the defendant the rights provided by the Agreement. In such a case of a detainer being filed *before* issuance of the writ of habeas corpus *ad prosequendum*, the return of the defendant to state prison officials prior to his trial commencing would entitle the defendant to have his federal prosecution dismissed pursuant to the provisions of article IV, subdivision (c), of the Agreement.

---

[4]In *Lawrence v. Willingham* (10th Cir. 1967) 373 F.2d 731, the court points out that the writ of habeas corpus *ad prosequendum* is necessary if one jurisdiction is to be able to bring a prisoner incarcerated in another jurisdiction to trial. In *Carbo v. United States* (1961) 364 U.S. 611, 618 [5 L.Ed.2d 329, 335, 81 S.Ct. 338], the court described the *ad prosequendum* writ as being "necessary as a tool for jurisdictional potency." In *Morgan v. United States* (9th Cir. 1967) 380 F.2d 686, the court added its voice in support of the principle of law that the writ of habeas corpus *ad prosequendum* is appropriate to bring a prisoner under incarceration by state or federal court to trial for alleged law violations. In *Carbo*, the court sets forth the observation "[t]hat comity is necessary between sovereignties in the administration of criminal justice in our federal-state system is given full recognition by affording through the use of the writ both respect and courtesy to the laws of the respective jurisdictions." (*Carbo, supra*, 364 U.S. 611, 621 [5 L.Ed.2d 329, 336]; fn. omitted.)

The *Mauro* court observes that the Agreement itself contains no definition of the word "detainer." The court, however, accepted the word as meaning a written notification, filed with the institution in which a prisoner is serving a sentence, advising the institution that such prisoner is wanted to face pending criminal charges in another jurisdiction.

A warrant for defendant's arrest, filed with prison officials, has been held to constitute a "detainer" under the Agreement. Thus, in *In re Shapiro* (1975) 14 Cal.3d 711 [122 Cal.Rptr. 768, 537 P.2d 888], a petitioner in a habeas corpus proceeding, on parole under the jurisdiction of the California Adult Authority for a California offense, committed a federal offense and was sentenced to federal prison at McNeil Island in the State of Washington. Thereafter, the Adult Authority suspended defendant's parole and ordered his return to prison for parole revocation proceedings. A California arrest warrant was forwarded to McNeil Island with a request that California authorities be notified 60 days prior to defendant's release. The *In re Shapiro* court stated that "[t]he federal officials treated the filing of the warrant and the request for notice as a detainer against petitioner." (*Id.* at p. 714.)

It is important to observe that, in response to Blake's petition for a writ of habeas corpus below to have the criminal charges dismissed against him because of the People's noncompliance with the provisions of Penal Code section 1389, the response of Sheriff Carpenter having custody of defendant, made through the district attorney, in the return to the order to show cause issued by the court, did not raise any defense that Penal Code section 1389 was not applicable because of a failure of California authorities to lodge a "detainer" with the federal prison officials. The sheriff's return and the memorandum of points and authorities in opposition to Blake's petition accepted the position that Penal Code section 1389 was applicable. The only position taken by the sheriff, through the district attorney, was that a proper interpretation of article V, subdivision (c), of Penal Code section 1389, meant that the 120-day period for bringing a prisoner to trial commenced upon the arrival of the prisoner in the receiving state in connection with proceedings (a felony complaint) which resulted in the filing of an information.

Under the view urged by the district attorney, Blake's initial custody by Santa Barbara officials was of no effect under the Agreement since the first felony complaint did not result in the filing of an information

in superior court, and that it was only when Blake was returned a second time to custody of California state officials that the 120-day period provided in article IV, subdivision (c), of Penal Code section 1389, became operative.

But at no time in the trial court did the respondent Sheriff Carpenter in the case at bench urge the contention that no "detainer" had ever been lodged with the federal prison officials and, hence, the provisions of section 1389 never became applicable to Blake. The record on appeal is silent as to whether any "detainer" was filed with the federal prison officials or as to what process caused the federal authorities to surrender Blake's custody to the Santa Barbara Sheriff.

We must reject consideration of the district attorney's request that we remand the case for an evidentiary hearing in view of the accepted principle on appeal that a party may not change his position and adopt a new theory on appeal—a theory which was not presented and, hence, not litigated below. "The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; *In re Marriage of Karlin* (1972) 24 Cal.App.3d 25, 33 [101 Cal.Rptr. 240].)

It has been suggested that a party may change from the theory advanced at trial to a new theory on appeal where the question is one of law alone and may be decided on the facts appearing in the record. (See *Ward v. Taggart* (1959) 51 Cal.2d 736 [336 P.2d 534].) This latter rule has no application in the case before us, since the record presented on appeal by respondent Sheriff Carpenter contains nothing which would disclose the absence of any "detainer" being lodged by California officials with federal prison authorities. In Sheriff Carpenter's return to the order to show cause issued in response to Blake's petition for habeas corpus, which is a part of our record on appeal, there appears the simple statement, "[p]etitioner was placed in state custody on May 17." Having acceded to petitioner Blake's position below that he had been transferred from federal custody to state custody pursuant to the provisions of Penal Code section 1389, respondent Sheriff Carpenter cannot now be permitted to seek to prove in a special evidentiary hearing below that California authorities filed no detainer with federal prison officials

prior to the change in custody of petitioner Blake from federal custody to state custody, and thus seek to establish that Penal Code section 1389 had no application to the California proceedings with respect to petitioner Blake.

 In light of the record before us, we hold that Blake's first change of custody from the federal prison to California state authorities on May 17, 1978, and his return to federal custody on July 28, triggered the application of Penal Code section 1389, article IV, subdivision (e). Under this subdivision, since Blake's trial was not conducted on the felony complaint initially issued against Blake and he was returned to federal prison officials without having a trial, the information subsequently filed in superior court as a result of a third felony complaint and preliminary examination, had no force or effect, and the trial court was required to enter an order dismissing the information with prejudice.

The order appealed from is affirmed.

Kingsley, Acting P. J., and Swearinger, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.