651 P.2d 115
**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Oliver Jesse SHAW, Defendant-Appellee.**

**No. 5597.**

Court of Appeals of New Mexico.

Aug. 26, 1982.

Jeff Bingaman, Atty. Gen., Heidi Topp Brooks, Eddie Michael Gallegos, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

John B. Bigelow, Chief Public Defender, Lewis Fleishman, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

WALTERS, Chief Judge.

Defendant and his brother were indicted in Bernalillo County on April 24, 1981. On May 13, 1981, an offer to deliver temporary custody of defendant to the Bernalillo authorities was filed in district court by the warden of the federal correctional institution at Bastrop, Texas, where defendant was then incarcerated. On the same date, defendant filed his request, under Article 3 A of the Interstate Agreement on Detainers, for final disposition of the indictment against him.

Article 3 A of the Agreement, found in § 31–5–12, N.M.S.A. 1978, provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged

against the prisoner, *he shall be brought to trial within one hundred eighty days after he has caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and *his request for a final disposition to be made of the indictment, information or complaint,* but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the state parole agency relating to the prisoner. (Our emphasis.)

Article 3 D further provides, in part:

Any request for final disposition made by a prisoner pursuant to Subarticle A shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed.

Other articles of the Agreement pertinent to this appeal are portions of 5 C, D, and E, as follows:

[5]C. [I]f an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period *provided in Article 3 or Article 4* of this agreement, the appropriate court of the jurisdiction where the indictment, information or complaint had been pending shall enter an order dismissing it with prejudice, and any detainer based thereon shall cease to be of any force or effect. (Our emphasis.)

[5]D. The temporary custody referred to in this agreement shall be *only* for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints *which form the basis of the detainer* or detainers or for prosecution on any other charge or charges arising out of the same transaction. (Our emphasis.)

[5]E. At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state.

Article 1 of the Agreement states the policy and purpose of the cooperating states which are parties to it, to be "to encourage the expeditious and orderly disposition of such charges [outstanding against prisoners already incarcerated in other jurisdictions] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." It explains that such unresolved charges "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." *Id.*

In Article 6, the Agreement recognizes that "the running of the time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial," and that the provisions of the Agreement shall not apply to adjudicated mentally ill persons.

This was the chronology in the instant case in its tortious path through the trial court:

| | |
|---|---|
| April 24, 1981 | Defendant indicted |
| May 13, 1981 | Defendant's request for final disposition; 180 days begins to run (Art. 3 A) |
| May 28, 1981 | Bernalillo County Asst. Dist. Attorney files request for temporary custody pursuant to Art. 4 |
| June 11, 1981 | New Mexico takes custody; 120 days begins to run (Art. 4 C) |
| June 22, 23; | |
| July 10, 1981 | Defendant's motions for discovery, per se representation, to dismiss indictment for denial of opportunity to testify before grand jury, etc., filed |
| July 14, 1981 | Trial set for week of August 14, 1981 |
| July 17, 1981 | Additional defense motions filed |
| July 27, 1981 | Additional defense motions filed |

| Date | Event |
| --- | --- |
| August 28, 1981 | Motions hearing continued two weeks to accommodate defense because of late disclosure provided by the State, and for an additional two weeks because of conflicts in the prosecutor's schedule |
| September 11, 1981 | Additional defense motions filed |
| September 15, 1981 | Notice filed of trial setting for October 19, 1981 |
| September 25, 1981 | Motions hearing; 15 decided, 6 continued on court's order |
| September 28, 1981 | State's motion for definite trial date filed |
| October 2, 1981 | Hearing on dismissal of indictment, suppression, habeas corpus motions of defendant; State offers to dismiss and reindict |
| October 14, 1981 | Defendant re-indicted on same charges |
| October 21, 1981 | First indictment dismissed for State's failure, under § 31–6–11 B, N.M.S.A. (1979 Supp.), to give defendant an opportunity to testify before grand jury |
| October 26, 1981 | Defendant arraigned on second indictment |
| November 6, 1981 | Order entered allowing defendant until November 10 to file motions |
| November 16, 1981 | Motions hearing; State advises court of 180-day limitation of art. 3 A, *supra* and requests 180-day extension; parties agree that hearing on extension may be continued to next motion hearing with State's rights as of November 16, 1981, if any, preserved until hearing |
| December 1, 1981 | Trial set for January 5, 1982 |
| December 17, 1981 | Second indictment dismissed for failure to try defendant within 180 days of his request for final disposition, per Agreement on Detainers |

The order of dismissal by the trial court, and the briefs of the parties, focus on Article 3 A of the Agreement requiring trial within 180 days of defendant's May 13, 1981, request for final disposition of the charges against him. That period of limitation would require trial no later than November 9, 1981. The November 16, 1981, request for continuance would, of course, be too late.

In the case of *In re Blake,* 99 Cal.App.3d 1004, 160 Cal.Rptr. 781 (1979), the court held that with relation to the 120-day limitation of Article IV(c), [Cal.] Penal Code § 1389

requires that a trial be commenced within 120 days of a defendant's arrival in the state desiring his temporary custody for trial with respect to "any proceeding made possible by this Article." The "proceeding" referred to is defendant's trial made possible by the provisions of subdivisions (a) and (b) of Article IV regarding the transfer of a defendant's custody in connection with "an untried indictment, information, or complaint," which is accomplished by actions of the prosecution authorities of the jurisdiction desiring to place the defendant on trial in lodging a "detainer" with the prison officials of the jurisdiction where the defendant is incarcerated and then presenting a written request for temporary custody.

*Blake* referred to the decision in *United States v. Sorrell,* 413 F.Supp. 138, (E.D.Pa. 1976), where, at 142, in assessing the impact of Article 4 C, the *Sorrell* court said:

Article IV(c) permits the retention of temporary custody for as long as four months. There is no discernible reason why a prisoner should languish in the demanding jurisdiction for four months, unless it be to assure his presence for pretrial necessities. One rendition with a maximum duration of 120 days accomplishes this without unnecessary peregrinations. Clearly, unless this be the intent of the Agreement, the 120 days is totally unnecessary.

By analogy, the same reasoning would apply to the 180-day limitation of Article 3 A, *supra.* Under that limitation, trial had to commence no later than November 9th. The "extension of 180 days" requested on November 16th was untimely.

In consequence of the apparent expiration of the deadline under Article 3 A, the State makes four arguments: (1) That the 180-day limitation applied only to the first indictment and began to run anew when the second indictment was filed; (2) That the time was tolled—an argument never presented to the trial court—between dismissal of the first indictment and reindictment; (3) That the State's announcement

on October 2, 1981 of its intention to dismiss and immediately reindict was a *de facto* continuance; and (4) That because the delays in prosecution were "almost entirely" caused by defendant he should not be permitted to rely on failure to timely prosecute to obtain a dismissal.

Without citation to any authority, the State urges that no indictment existed after the October 2nd dismissal upon which the time could run; that defendant should have been returned to federal custody and a new detainer issued when he had been reindicted.

It is true that the trial court announced on October 2, 1981, that it would grant defendant's motion to dismiss on grounds that he had not been given the opportunity to testify before the grand jury which returned the April 24, 1981, indictment. Denial of that opportunity is contrary to the requirements of § 31–6–11 B, N.M.S.A. 1978 (1979 Supp.). But the order of dismissal was not entered until October 21, 1981. The Supreme Court was emphatic, in *State v. Morris*, 69 N.M. 89, 364 P.2d 348 (1961), in declaring that a ruling from the bench is not a judgment, nor is it final; it does not become so until it is formally reduced to writing. The trial court can change an oral decision at any time before its formal written order is entered upon the records and signed by the judge. *Bouldin v. Bruce M. Bernard, Inc.,* 78 N.M. 188, 429 P.2d 647 (1967). Ergo, the first indictment was not dismissed on October 2nd; if there was no gap between dismissal and reindictment—and there was none, of course, because the first indictment was not dismissed until one week after the second had been filed—there could be no tolling during that period.

■ Our inquiry, therefore, must first be directed to determining whether the State is correct in asserting that the new indictment caused the time provisions of Art. 3 A to begin running again. It points to Art. 3 D providing for "final disposition of all untried indictments" within the 180-day period, and argues that the defendant's request on May 13, 1981 could not possibly have applied to the second indictment that was not in existence at the time. The problem with the State's argument is that it overlooks the remaining words of Art. 3 D, which include "information or complaints on the basis of which detainers have been lodged," in addition to the portion it quotes, and the provisions of Art. 4 E which read:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment ... such indictment, information or complaint shall not be of any further force or effect, and the court *shall* enter an order dismissing the same *with prejudice.* (Emphasis added.)

As *Blake, supra,* observed, only one transfer of custody is contemplated by the Agreement, and when temporary custody is once obtained, "all prosecution proceedings must be completed before return of the defendant to the sending state ... to avoid having to dismiss the action with prejudice." (99 Cal.App.3d at 1016, 160 Cal.Rptr. at 787.) The criminal conduct on which the detainer was lodged, whether contained in an indictment, information or a mere complaint, was in this case the identical conduct charged in both indictments. The State was alerted to the likely invalidity of the first indictment four months before the 180 days had run; a presumably valid indictment was obtained three weeks before the 180 days was to expire. The State is presumed to know that if defendant were returned to the sending state, as it suggests, without completing prosecution proceedings on the charges contemplated and for which the detainer had been issued within the 180-day period, the indictment had to be dismissed with prejudice. Article 5 C, *supra.*

We decline to subvert the unmistakable meaning of the various provisions of the Agreement by holding that a second indictment in October on the identical charges for which defendant was returned to New Mexico in June for pre-trial and trial proceedings, can avoid the time restrictions of Article 3 on the theory that the time commences

584

anew from the filing of the second indictment. *Compare State v. Martinez,* 92 N.M. 291, 587 P.2d 438 (Ct.App.1978). To espouse a view that dismissal before 180 days stops the limitation of Article 3, but reindictment begins it over again, would make a farce of the entire design and objectives of the Agreement. *See Sorrell, supra.*

■ Having decided against the State on its first and second points, we consider whether the State's representation on October 2, 1981, that it would reindict was a *de facto* continuance. The trial court, in its order of dismissal on January 29, 1982, made specific findings that "no continuance was requested and none was granted," and that "[t]he oral motion by the State that a second indictment would be obtained is not a request for continuance."

We will not disturb a trial court's findings if they are supported by the evidence. *Barber's Super Markets, Inc. v. Stryker,* 84 N.M. 181, 500 P.2d 1304 (Ct.App.1972). We have reviewed the transcript of the October 2nd and December 17th proceedings thoroughly, and are satisfied that the trial court's ruling is sustained by substantial evidence. *State v. Alderete,* 95 N.M. 691, 625 P.2d 1208 (Ct.App.1980), does not dictate otherwise. *Alderete* recites that "it is uncontradicted that there was a continuance" from the 180th day, on which trial was scheduled, to six weeks later. The record brought up by defendant there was insufficient to overcome the State's showing that a continuance had been granted. The record brought up by the State in this case is fully adequate to support the trial court's finding of no continuance.

■ We turn, lastly, to the State's argument that because the defendant was successful in having the first indictment dismissed, and filed numerous motions in both the first and second proceedings (requiring pre-trial hearings which delayed commencement of trial), he should be deemed to have consented to a continuance or to have waived the time limit. We are told that the first trial setting of August 14, 1981, "as an accomodation to the Defendant ... was delayed so that he would be able to testify

at the grand jury. The State asks that the time attributable to this delay be excluded in calculating the limitation as it was caused by and acquiesced in by the Defendant." The State points also to continuance of two motion hearings granted at defendant's request, one at the State's request, and one because of a codefendant's counsel's absence, as evidence of defendant's "fault" for "a substantial portion of the delay" in the progress of this case.

How ironic would be our criminal justice system were we to adopt the State's reasoning. We note at the outset that no such tolling argument was presented to the trial court. But if defendant is to be penalized for filing motions by tolling the time for commencing trial while those motions await a hearing, what penalty should the State suffer, with respect to the time for bringing defendant to trial, as a result of any delay caused by the necessity for pre-trial hearings on its motions? Should the time consumed by its motions or other preliminary proceedings be doubled?

More troublesome, however, is our attempt to discern what reason there might be for any time limitations if the time is to be controlled by a stop-watch sort of counting: "start" when one of the operative facts of Article 3 occurs; "stop" when defendant exercises a right accorded him by the due process clause or by statutory provisions; "start" again when his claims have been heard and decided. If no time is to be charged for court proceedings occasioned by defendant's perfectly proper and legally authorized pre-trial challenges to the charges against him, of what necessity is a six-month hiatus between detention and trial? (*See Sorrell, supra,* at 413 F.Supp. 142.) The Agreement precisely inveighs against unwarranted interruption of a prisoner's treatment and rehabilitation programs in the sending state. It establishes 120 or 180 days as a reasonable interruption, depending on whether Article 3 or 4 triggers the limitation period. We cannot hold that the Agreement does not mean what it says.

Cases deciding this question take both sides. *Compare, e.g., Cobb v. State,* 244 Ga.

344, 260 S.E.2d 60 (1979), and *People v. Leonard,* 18 Ill.App.3rd 527, 310 N.E.2d 15 (1974), with *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53 (Mo.App.1980), and *Commonwealth v. Klimek,* 416 Pa. 434, 206 A.2d 381 (1965).

It is unsettling to note that in the cases cited by the State and those we have independently perused wherein defendants were held to have caused a tolling of the limitation period because their motions "delayed" trial, none indicated that the prosecution had availed itself of the simple statutory expedient of requesting continuance "for good cause shown." Art. 3 A, *supra.* Thus the prosecutors' lack of diligence and noncompliance were excused, and the defendants' resort to the entitlements allowed them were held to operate against their protections in a punitive manner. Those decisions do not appear to be in keeping with the "solemn agreement" (*see* § 31–5–1, N.M.S.A. 1978) that the Agreement on Detainers "shall be liberally construed so as to effectuate its purposes" (§ 31–5–12, *supra,* Art. 9) of encouraging expeditious and orderly dispositions of untried charges (*id.,* Art. 1).

We prefer, therefore, to adopt the view that the time limitations of the Agreement were intended to permit sufficient time and opportunity for disposition of all pre-trial proceedings and commencement of trial before the time expired. The Agreement specifies that time is tolled only when the prisoner is "unable to stand trial" as determined by the court (Art. 6 A); in all other circumstances, it provides the mechanism for reasonably or necessarily extending the time limits by a request for continuance "for good cause shown." When the trial court has not been asked to exercise the authority granted to it by the Agreement for extending the time to bring the matter to trial, we find nothing in the Agreement or in logic which would give us the authority to do so.

The district attorney may not have wilfully caused any delay in trying defendant, but as the *Klimek* court noted, at 206 A.2d 382, that is not a controlling issue nor is it a valid excuse for not complying with the statute.

We find no merit in any philosophy that pays lip service to the principles of due process, speedy trial, and binding interstate compacts (*see* § 31–5–1 G, N.M.S.A. 1978), and then ignores those principles because their benefits were called upon by the very person whose interests were intended to be protected by them.

The order dismissing the charges against defendant, with prejudice, is affirmed. IT IS SO ORDERED.

HENDLEY and DONNELLY, JJ., concur.