[Crim. No. 18860. First Dist., Div. Two. Nov. 8, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MOLLY RIVERA REYES, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Dennis P. Riordan and Gregory H. Tomlin, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, and Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Ronald E. Niver and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—Molly Rivera Reyes appeals from the denial of her motion to dismiss, the judgment of conviction rendered against her, and the sentence imposed by the Superior Court of Contra Costa County.

On April 18, 1978, a detainer was lodged against appellant pursuant to the Agreement on Detainers. (18 U.S.C. appen., art. III; Pen. Code, § 1389 et. seq.) At that time, appellant was serving a 15-year sentence at the Federal Correctional Institution, Pleasanton, California.

As a result of the detainer, appellant was released to the custody of Contra Costa County authorities on July 12, 1978. Appellant was detained in the Contra Costa County jail until August 3, 1978, the time when a preliminary hearing was conducted in the Contra Costa Municipal Court. On August 3, 1978, appellant was returned to Pleasanton.

By information filed August 17, 1978, in Contra Costa County Superior Court, appellant was charged with being an accessory, kidnaping for robbery, robbery, and grand theft, in violation of sections 32, 209, 211 and 484-487, subdivision 3 of the Penal Code.

On September 19, 1978, appellant moved to have the information dismissed on the grounds that she had been denied her right to a speedy trial pursuant to section 1389 of the Penal Code, in that she had been transferred back to her original place of confinement without receiving a trial. The motion was denied.

Thereafter, appellant entered a plea of guilty to a violation of section 211 of the Penal Code and the other charges were dropped. She was sentenced to state prison for the term prescribed by law; such sentence to run concurrent with her incompleted federal term.

■ Appellant's sole contention on appeal is that the trial court improperly denied her motion to dismiss pursuant to article IV(e) of section 1389 of the Penal Code. The issue of whether the transfer from a federal facility to a state or county facility within the same state is subject to provisions of section 1389 of the Penal Code is a matter of first impression in California.

The United States Congress enacted Public Law No. 91-538 (the Interstate Agreement on Detainers Act) in 1970. (84 Stat. 1397-1403.) California enacted the identical agreement as section 1389 of the Penal Code. Thereafter, the United States Supreme Court analyzed the agreement in *United States* v. *Mauro* (1978) 436 U.S. 340, 351-352 [56 L.Ed.2d 329, 341-342, 98 S.Ct. 1834]:

"The Agreement, in the form adopted by the United States and other member jurisdictions, sets forth the findings upon which it is based and its purpose in Art. I. It notes that 'charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.' Accordingly, its purpose is to encourage the expeditious disposition of such charges and to provide cooperative procedures among member States to facilitate such disposition.

"The central provisions of the Agreement are Art. III and Art. IV. Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. The warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges. Art. III(c). If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days. Art. III(a). The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that State, Art. III(d), and is deemed to be a waiver of extradition. Art. III(e).

"Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges. Once he has filed a detainer against the prisoner, the prosecutor can have him made available by presenting to the officials of the State in which the prisoner is incarcerated 'a written request for temporary custody or availability....'[1] Art. IV(a)."

The court then notes two important limitations that are placed on a prosecuting authority once it has obtained the presence of a prisoner pursuant to article IV. One of these is particularly pertinent to the case at bench: "Art. IV(e) requires the receiving State to try the prisoner on the outstanding charge before returning him to the State in which he was previously imprisoned: 'If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.'" (*Id.* at pp. 352-353 [56 L.Ed.2d at p. 342].)

---

[1]Article IV(a) states: "The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided,* That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: *And provided further,* That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

It is clear from article I of both the United States and California statutes that the purpose of the agreement is to encourage the *expeditious* and orderly disposition of outstanding charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.

Appellant herein asserts that because Contra Costa County, having gained custody over her pursuant to the agreement, failed to try her prior to her return to her original place of imprisonment at Pleasanton, the information should have been dismissed with prejudice pursuant to Penal Code section 1389, article IV(e).

Federal courts have construed and applied section 1389, article IV(e)'s federal counterpart, United States Code title 18, appendix, article IV(e), and their decisions are pertinent to the instant action.

In *Gray* v. *Benson* (D.Kan. 1978) 443 F. Supp. 1284, the defendant brought a postconviction proceeding challenging the validity of federal conviction and sentence as violative of the Interstate Agreement on Detainers Act. The undisputed facts indicated that a detainer was lodged against Gray, who was at the time a prisoner at the Missouri State Penitentiary. Pursuant to a federal writ of habeas corpus *ad prosequendum,* Gray was removed from state custody and appeared in federal court for pretrial proceedings and arraignment. He was then returned to his original place of imprisonment without being tried. The court found that those facts unmistakably evidenced a violation of article IV(e) of the Interstate Agreement on Detainers.

With one exception which will be discussed *infra,* the facts in *Gray* are similar to those in the present case. On or about July 7, 1977, appellant was incarcerated in the Federal Correctional Institution in Pleasanton, California. On April 18, 1978, the subject detainer was filed. Appellant was released to Contra Costa authorities on July 12, 1978, and held in that county until after her preliminary hearing on August 3, 1978, at which time she was returned to the Federal Correctional Institution in Pleasanton. The prosecutor neither disputed the factual basis for appellant's section 1389 claim, nor offered any explanation for her transfer back to her original place of confinement prior to her trial on the charges pending against her in Contra Costa County. As in *Gray,* these facts unmistakably evidence a violation of Penal Code section 1389, article IV(e).

The People's claim that article IV(e) only applies to transfers which are interstate, as opposed to intrastate, in character is meritless. In *United States* v. *Sorrell* (E.D.Pa. 1976) 413 F.Supp. 138, affirmed 562 F.2d 227, certiorari denied, 436 U.S. 949 [56 L.Ed.2d 793, 98 S.Ct. 2858], proceedings were instituted on motion of defendant to dismiss an indictment charging unlawful possession of a firearm. The court held that the defendant, confined to a state correctional institution, could not be brought to court to answer federal charges without compliance with the Interstate Agreement on Detainers Act, and that where the defendant was returned to the state correctional institution after arraignment without having been tried, the provisions of the agreement were not complied with. Therefore, the indictment was dismissed with prejudice.

Similarly, in *United States* v. *Thompson* (3d Cir. 1977) 562 F.2d 232, certiorari denied, 436 U.S. 949 [56 L.Ed.2d 793, 98 S.Ct. 2858], the Court of Appeal rejected the holding of the district court that the Detainer Agreement is not applicable where the federal government is trying a state prisoner serving his state sentence within the geographical limits of the state in which the federal district court is located. (*Id.* at p. 234, fn. 2.)

This court can see no rational reason for precluding appellant from availing herself of the procedural safeguards embodied in Penal Code section 1389, article IV(e) simply because her transfer was not interstate in character. The United States and the State of California are parties to the agreement as both sending and receiving states. (*United States* v. *Mauro, supra,* 436 U.S. at p. 354 [56 L.Ed.2d at p. 343].) The purpose for the agreement is to encourage the expeditious disposition of charges outstanding against prisoners which produce uncertainties that obstruct programs of prisoner treatment and rehabilitation. When a jurisdiction assumes temporary custody for the purposes of disposing of a pending action upon which a detainer was filed, that jurisdiction must resolve all matters pertaining to that action while the prisoner is in the receiving state's custody. (*Walker* v. *King* (S.D.N.Y. 1978) 448 F.Supp. 580, 586.) Because it occurred prior to her trial, appellant's return to her place of original incarceration was not a return consonant with the purposes of the agreement.

█ Finally, the People contend that, pursuant to section 1237.5 of the Penal Code,[2] a guilty plea operates as a waiver of any violation of

---

[2]Section 1237.5 of the Penal Code states in part: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty...following an admission of

the Interstate Agreement on Detainers. However, the cases which respondent cites to support this position are not on point.

In *Camp* v. *U.S.* (8th Cir. 1978) 587 F.2d 397, the court held that a voluntary plea of guilty waives an Interstate Agreement on Detainers claim *raised for the first time* three years after the plea had been lodged and sentencing effected. *Williams* v. *Maryland* (D.Md. 1978) 445 F.Supp. 1216 held that a defendant's complaint was procedurally defective where the defendant pleaded guilty and then asserted an Interstate Agreement on Detainers claim without giving proper notice of his claim, thereby failing to meet the burden of compliance with the provisions of the act. In *U.S.* v. *Palmer* (3d Cir. 1978) 574 F.2d 164, the court denied appellant's claim on the grounds that he had failed to raise the issue in a timely manner: "The parties do not dispute that a violation of the IAD in fact took place. If defendant had raised this contention prior to pleading guilty, the indictment would have been dismissed with prejudice." (*Id.* at p. 166.)

Similarly, in *Gray* v. *Benson, supra,* 443 F.Supp. 1284, the court stated that there was unmistakable evidence of an article IV(e) violation of the Interstate Agreement on Detainers, but that the defendant waived his right by failing to present the issue prior to entering a plea of guilty. The court in *Gray* requested additional briefs on the issue of waiver and in *Gray* v. *Benson* (D.Kan. 1978) 458 F.Supp. 1209 at page 1215, the court noted that such a claim would have been a complete defense if the defendant had raised it prior to his guilty plea. Moreover, other factors were present to influence the court to deny the claim. In addition to the legal conclusion that petitioner forfeited his remedy under article IV(e) by failing to assert it prior to pleading guilty, the court had before it credible evidence that the defendant requested the return to Missouri state prison prior to completion of his federal prosecution. Not only did this negate the defendant's claim of prejudice but, in such a case, the prisoner was estopped from claiming the remedy under article IV(e).

Thus, the procedural sequence in respondent's cited cases is (1) plea of guilty, (2) assertion of Interstate Agreement on Detainers claim, and

violation, except where: (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

(3) denial of the claim. The procedural sequence in appellant's case is clearly distinguishable. Here there was (1) an assertion of the Interstate Agreement on Detainers claim, (2) denial of the claim, (3) a plea of guilty with certificate of probable cause for appeal issued simultaneously, and (4) an appeal on the denial of the Interstate Agreement on Detainers claim. Procedurally, appellant did everything required of her to avail herself of the protection of the Interstate Agreement on Detainers.

According to respondent's argument, defendants who claim violation of an Interstate Agreement on Detainers right that is improperly denied by the lower court would be required to fully litigate the charges brought on the Interstate Agreement on Detainers claim in order to preserve their right to appeal the denial. This anomalous result would be costly and wasteful in terms of both time and money expended to try charges which properly should have been considered under Interstate Agreement on Detainers provisions.

In light of the foregoing, we find that the trial court erred when it failed to dismiss the information filed against appellant pursuant to Penal Code section 1389, article IV(e).

The judgment is reversed and the action ordered dismissed with prejudice.

Taylor, P. J., concurred.

ROUSE, J.—I concur, only because I am satisfied that this absurd result is mandated by the statute in question and by the cases which interpret that statute.

The correctional institution at Pleasanton enjoys a reputation as one of the most comfortable facilities in the federal penal system. It is located 33 miles from the town of Martinez where the Contra Costa County jail, the "receiving state" facility, is situated. Given these circumstances, it is reasonable to assume that, pending final disposition of her case in the California courts, and for purely humanitarian reasons, it would be appropriate for the receiving state custodian to permit the defendant to return to her more commodious surroundings at Pleasanton where she was undoubtedly involved in rehabilitation programs which are not available at the Contra Costa County jail. Alas, there is nothing in this

record to support such an assumption; nor is there any indication of a predetermined arrangement with the federal custodian for her detention in the federal facility, pending final disposition of state charges, as seems to be contemplated by section 1389, article V, subdivision (a), of the Penal Code. On the other hand, I find nothing in the record which suggests (nor does she claim) that the temporary return of Mrs. Reyes to the Pleasanton facility, while awaiting final disposition of the state charges, in any way discouraged "the expeditious and orderly disposition of such charges...." (Pen. Code, § 1389, art. I.) Thus, we exalt form over substance.

Jail and other detention or correctional facility custodians will be well advised to take note of this case lest they be led down the garden path by transferring custody of a prisoner to a "sending state" before final disposition of the local proceedings.

Respondent's petition for a hearing by the Supreme Court was denied January 3, 1980.