SAMUEL L. MOORE

*v.*

WILLIAM WHYTE, *Superintendent,*

HUTTONSVILLE CORRECTIONAL CENTER

(No. 14633)

Decided May 13, 1980.

*Michael B. Victorson* for petitioner.

*Chauncey H. Browning*, Attorney General, *Richard L. Gottlieb, Ann V. Dornblazer*, Assistant Attorneys General, for respondent.

HARSHBARGER, JUSTICE:

Moore protests his confinement, claiming that he was convicted and sentenced in violation of the Interstate Agreement on Detainers, W. Va. Code, 62-14-1.

He was indicted on March 30, 1972, for armed robbery by a Logan County grand jury while he was in the Atlanta federal penitentiary. A Logan County prosecutor sent a capias and letter to the U. S. Marshal stating:

> Please find enclosed herewith a capias for the arrest of one Sam Moore. I hereby request that you place this capias with the proper institution as a holder for our office against said Sam Moore.

The Marshal forwarded the warrant to the warden in Atlanta, who acknowledged the letter and responded:

> If the inmate is wanted by you and you desire to file a detainer, it will be necessary for you to forward to us a certified copy of your warrant.

On July 27, 1972, an attested copy of the indictment was sent to Atlanta with a letter from the prosecutor requesting:

that you place same as a detainer against Samuel Moore and in the event he should be released please notify our office and we will make arrangements to have him returned to West Virginia.

Confirmation that the detainer had been received was sent from Atlanta on August 8, 1972.

Then, the Logan County Circuit Court signed two writs of habeas corpus *ad prosequendum* on the 14th and 23rd of August, 1972.[1] Both required Moore's presence on September 14 for prosecution. Moore was returned to West Virginia, brought before the Logan County Court on three separate occasions in September, and without having been tried was returned to Atlanta on October 7.

On December 1, 1972, the Logan County prosecutor's office again requested that he be brought here. He was returned on January 31, 1973 for trial on February 20, but on that day the prosecution moved for a continuance, which was granted by the court, and Moore was finally tried on March 27. He was convicted of armed robbery and sentenced to serve twenty years in the penitentiary. He filed petitions for habeas corpus in circuit court and here. The circuit court denied the petition.

[1] YOU ARE HEREBY COMMANDED that you have the body of Samuel Moore, detained in the United States Federal Penitentiary, Atlanta, Georgia, under the custody of James D. Henderson, Warden, under safe and secure conduct, before the Judge of the Circuit Court of Logan County, West Virginia, at Logan, West Virginia, at 10:00 o'clock a. m. on the 14th day of September, 1972, there to be prosecuted as Defendant in indictments returned against him in the Circuit Court of Logan County, West Virginia, at Logan, West Virginia, on the 30th day of March, 1972, and immediately after the said Defendant shall then and there be prosecuted as aforesaid, and after all proceedings are concluded in the Circuit Court of Logan County, that you return him to the custody of the said James D. Henderson, Warden under safe and secure conduct, and have you then and there this writ.

Did the state violate Articles IV(c), IV(e), and V(c) of the Agreement (Code, 62-14-1)? Article IV(c)[2] requires that a prisoner's trial commence within 120 days of his arrival in the state, *unless good cause for a continuance is shown in open court.* If Article IV(c) is violated, Article V(c)[3] requires the court to dismiss the charge with prejudice. This remedy, dismissal with prejudice, is also provided in Article IV(e)[4] if the state returns the prisoner to the jurisdiction of his original confinement without having tried him.

The government recognizes that the United States Supreme Court decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) holds with its companion case, *United States v. Ford*, 550 F.2d 732 (2d Cir. 1977), *affirmed*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), that state behavior identical to this

---

[2] Code, 62-14-1. Agreement on Detainers.
ARTICLE IV
(c) In respect of any proceeding made possible by this article, trial *shall* be commenced within one hundred twenty days of the arrival of this prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. (Emphasis added.)

[3] Code, 62-14-1. Agreement on Detainers.
ARTICLE V
(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall *enter an order dismissing the same with prejudice,* and any detainer based thereon shall cease to be of any force or effect. (Emphasis added.)

[4] Code, 62-14-1. Agreement on Detainers.
ARTICLE IV
(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the *court shall enter an order dismissing the same with prejudice.* (Emphasis added.)

violates the Agreement and requires dismissal of the charge. Because *Mauro* was not decided until 1978, and petitioner was tried in 1973, the state argues that it reasonably relied on prior decisions to determine what conduct would comply with the Agreement.

There is no doubt that much confusion existed pre-*Mauro* about whether a federal writ of habeas corpus *ad prosequendum* constituted a detainer. This interpretive problem arose because the IAD rules are not triggered until a detainer is lodged. If a detainer is filed against the prisoner, the "receiving state" may obtain custody of him by sending a "written request for temporary custody" to the "sending state." Agreement, Article IV(a).[5] Then when a prisoner is brought into the receiving state, he must be tried within 120 days and may not be returned to the sending state before trial. If the receiving state fails to meet these conditions, the charges must be dismissed with prejudice, as noted *supra*.

The federal government was frequently obtaining custody of state ·prisoners by writs of habeas corpus *ad prosequendum*, per 28 U.S.C. §2241(a) and (c)(5). As a party to the IAD, if those writs were detainers, the federal government would be obliged to abide by the 120-day and no-return rules. By 1977 five circuits had

---

[5] Code, 62-14-1. Agreement on Detainers.

ARTICLE IV

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner *against whom he has lodged a detainer* and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, that the *court having jurisdiction of such indictment*, information or complaint shall have duly approved, recorded and transmitted the request: Provided further, that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner. (Emphasis added.)

decided the issue and were split three[6] to two[7] in favor of holding that the federal writs of habeas corpus *ad prosequendum* did not constitute detainers under the Agreement. Surprisingly, these are the cases that the state cites to support its position. Based on this split of opinion among the circuits, which did not arise until 1977, it claims it was justified in failing to follow the terms of the Agreement in 1972 and 1973. If nothing else, the state's argument is temporally inaccurate. Prosecutors in Logan County in 1972 could not possibly have "reasonably relied" on authorities that did not surface until 1977.

The issue here and the issue in the cases cited as authority for the state's behavior differ markedly. Those cases speak to whether or not a federal writ of habeas corpus *ad prosequendum* is a detainer. In *United States v. Mauro, supra, United States v. Kenaan, supra, United States v. Scallion, supra,* and *Ridgeway v. United States, supra,* no separate detainer was filed. Here a detainer was lodged before the writ of habeas corpus *ad prosequendum.*

Although the Agreement does not define detainer, the legislative reports leading to its adoption by the United States Congress state that a detainer "is a notification filed with the institution in which a prisoner is serving sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." S.Rep. No. 91-1356, 91st Cong., 2d Sess. (1970); H.R.Rep. No. 91-1018, 91st Cong., 2d Sess. (1970). Our own court has defined a detainer as "a writ or instrument, issued or made by a competent officer, authorizing the keeper of a prison to keep in his custody a person therein named." *State v. Arrington,* 147 W. Va. 753, 762, 131 S.E.2d 382, 388 (1963). A capias accompanied by a letter requesting that a prisoner be held in custody pending arrival of state officers

---

[6] *United States v. Kenaan,* 557 F.2d 912 (1st Cir. 1977); *United States v. Scallion,* 548 F.2d 1168 (5th Cir. 1977); *Ridgeway v. United States,* 558 F.2d 357 (6th Cir. 1977).

[7] *United States v. Mauro,* 544 F.2d 588 (2d Cir. 1976); *United States v. Sorrell,* 562 F.2d 227 (3d Cir. 1977) (en banc).

was held to be a detainer in *State v. Arrington, supra.* The Logan County prosecutor's office, following an identical procedure except that it more clearly and specifically requested that a detainer be lodged,[8] intended to and did issue a detainer for Samuel Moore. The lodging of the detainer was even confirmed by Atlanta authorities. Therefore, any analogy to those circuit cases again fails.

The question is whether writs of habeas corpus *ad prosequendum,* issued by a state court judge, are "written request[s] for temporary custody" within the meaning of Article IV(a) of the Agreement; not whether they are detainers.[9] *Mauro* determined that federally issued writs of habeas corpus *ad prosequendum* are written requests which activate the procedural requirements of Article IV and V of the Agreement if a detainer had previously been lodged.[10]

It would be impossible to construe these documents as anything but written requests for temporary custody. Not only do they request custody of the prisoner, they recite that he is being removed "to be prosecuted as Defendant in indictments returned against him . . . and immediately after the said Defendant shall then and there be prosecuted as aforesaid, and after all proceedings are concluded" he will be returned.

A party state to the Agreement is presumed to know its terms and must comply with it. *Enright v. United*

---

[8] *See* contents of letter in text, *supra.*

[9] The federal cases deal with writs of habeas corpus *ad prosequendum* issued by district courts pursuant to 28 U.S.C. § 2241(c)(5). These federal writs differ from our state writ because they can be used to bring the prisoner into court either to be tried or to testify. The state writ was solely to bring the prisoner within the state to prosecute him.

[10] The state argues on the basis of the Fourth Circuit opinion in *Brown v. Mitchell,* 598 F.2d 835 (1979) that we should not apply *Mauro* retroactively. Despite our respect for that Court, we are not bound by its holdings or rationale. We have written about the reasons for retroactivity in *Adkins v. Leverette,* ___ W.Va. ___, 239 S.E.2d 496 (1977).

*States,* 434 F.Supp. 1056 (S.D.N.Y. 1977); 437 F.Supp. 580 (S.D.N.Y. 1977). And therefore, after lodging the detainer against Moore and having him returned, West Virginia was obliged to try him within 120 days of his arrival, and not return him before he was tried; or it would forfeit its right to try him at all under the indictment. Agreement, Articles IV(c), IV(e), and V(c). Moore was kept in West Virginia for nearly two months, until October 7, 1972, and then returned to Atlanta without having been tried. This violates Article IV(e). In addition, Article IV(c) required that he be tried by January 14, 1973 (within 120 days) unless a good cause motion for a continuance had been granted in open court with the prisoner present. The record does not reveal any such motion before January 14, 1973, and the state does not argue that one existed.

The language in Article IV(e) and V(c) has been held to be mandatory. *United States v. Ford,* 550 F.2d 732, 744 (2d Cir. 1977), *affirmed,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). This State by failing to comply must dismiss the charges against Moore. Our court was without jurisdiction to try him. With respect to the "three-term rule", a similar provision requiring dismissal for failure to try within a specified time period, we stated in *Ex parte Anderson,* 81 W.Va. 171, 94 S.E. 31 (1917):

> The statutory mandate for the discharge of a prisoner, under certain circumstances, is not a regulation of procedure in a trial, nor a prescription of a right to be preserved therein. It is a direction and mandate not to try. This is a necessary implication arising out of terms of the mandate. The express command to discharge, necessarily implying a command not to try, is a limitation upon the jurisdiction of the court, and its judgment rendered in a trial it had no right to entertain, is obviously coram non judice. ... and a person held in custody under a void judgment may be liberated by the writ of habeas corpus.
>
> *Id.,* 81 W.Va. at 172-73, 94 S.E. at 32.

The verdict and sentence against Samuel Moore are void and without force. Petitioner is entitled to immediate release.

*Writ granted.*