[Crim. No. 11643. Fourth Dist., Div. One. Nov. 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN DOUGLAS LITKE, Defendant and Appellant.

490

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, David A. Kay, Kenyon C. Keller , Quin Denvir, State Public Defender, and Paul Bell, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WORK, J.**—Defendant, Steven Litke (Litke), attacks the judgment of conviction entered on guilty pleas to various felonies. He asks dismissal

of all charges pursuant to Penal Code[1] section 1389, the California enactment of the Interstate Agreement on Detainers (IAD) claiming detention violations. Assuming Litke falls within the purview of the IAD, we find no violation and affirm the judgment.

Litke was taken into federal custody July 25, 1979, for alleged violation of federal parole after failing to report his arrest on new state charges. He was placed in the Metropolitan Correctional Center (MCC), 808 Union Street, San Diego, a federal prison, and housed there during all these proceedings. He was not found in violation of federal parole until October 18, 1979.

On July 25, 1979, the marshal of the Municipal Court of San Diego County forwarded a "Letter of Detainer" to authorities at MCC notifying them of the state charges pending in San Diego County, requesting Litke be detained and the marshal notified at least 30 days before release date.

Litke promptly requested his federal case worker to institute action in accordance with the IAD. He was told "write a letter and file [his] own motion." On August 1, 1979, he did just that by letter handwritten to the Clerk of the Superior Court of San Diego County requesting a speedy trial. This letter did not refer to the IAD. Two days later, he filed an additional request in motion form accompanied by a cover letter designed to insure placing himself within the scope of the IAD.[2]

Litke's letter of August 3, 1979, reads:

"RE: Bench Warrent(s) [*sic*] = F55008, D664157 and D686130

"Dear Clerk,

"Please find attached herewith a motion for speedy trial, pursuant to the above warrents and a filed detainer.

"Let me fully explain my intent, so there can be no misunderstanding regarding my type of speedy trial filing.

---

[1] All section references are to the Penal Code unless otherwise indicated.

[2] Admittedly, these letters do not comply with the procedure outlined in section 1389, article III.

"My motion for speedy trial is being sent under the Interstate Agreement on Detainer's Act, from one soverign [sic] to another for speedy trial on detainer charges.

"I want to make sure that you follow the proper procedure in obtaining me for a speedy trial under the Interstate Agreement on Detainer Act, and the Director of the Bureau of Prisons policy and procedures.

"Please make application to the Director, Bureau of Prisons, and on approval of...your application by the Central Office I may be produced for trial and etc.

"Sincerely,

"Steven D. Litke"

In spite of this clear request the prosecutor ignored IAD procedures, obtained writs of habeas corpus ad prosequendum on several occasions and obtained Litke's presence in state court for prosecution by this method.[3] Each appearance involved a two block stroll from MCC to San Diego County courthouse where Litke was placed into a holding cell adjacent to the courtroom in which proceedings were pending. On each occasion, after a brief court appearance, he was returned to the holding cell and walked back to MCC the same day. He was never booked into a state holding facility for housing purposes.

Litke unsuccessfully moved to dismiss the information on the ground he was returned to his original place of federal imprisonment (MCC) from state "custody" before completion of trial on state charges.

Litke offered to submit his trial on the transcript of preliminary hearing in order to avoid lengthy proceeding, and to preserve the IAD issue on appeal.

The prosecutor refused to allow submission.

Following publication of *People* v. *Reyes* (1979) 98 Cal.App.3d 524 [159 Cal.Rptr. 572] (hg. den.), Litke pleaded guilty pursuant to a bargain with the trial court guaranteeing him a certificate of probable cause (§ 1237.5), and an agreement to allow withdrawal of guilty pleas should the IAD issues not be cognizable on appeal.

---

[3]This appears to be the customary practice in all courts in the San Diego area.

At the outset, we note both Litke and the Attorney General urge us to decide this appeal on its merits; Litke on authority of *People* v. *Reyes, supra*, 98 Cal.App.3d 524; the respondent in the interests of "judicial economy."[4]

The IAD is an interstate compact to which the federal government and a majority of the states are signatories. California enacted the agreement as section 1389. Although the agreement was designed by and for participation by the states, the federal government later joined as a full and equal party. (Pub. L. No. 91-538; 84 Stat. 1397-1403 (1970).)

Section 1389 sets forth extensive procedural rules designed to enable prisoners held in one jurisdiction to be expeditiously tried on concurrently pending charges in another, either at request of the prisoner (§ 1389, art. III) or by initiation of the jurisdiction in which charges are pending. (§ 1389, art. IV.) No matter who makes the request, there must be a timely disposition of the pending charges *before the prisoner's return to the original place of imprisonment.* (See § 1389, art. III, subd. (d), art. IV, subd. (e).) A violation entitles a prisoner to dismissal of the pending charges with prejudice. (§ 1389, art. III, subd. (a), art. IV, subd. (c).)

Article IX expressly mandates a liberal construction to fulfill the following purposes:

(a) To encourage an expeditious and orderly disposition of charges pending in jurisdictions other than the one within which a prisoner is serving a term of imprisonment and determination of the proper status of detainers on untried accusatory pleadings.

(b) To provide cooperative procedures regarding matters set forth in (a).

(c) To minimize disruption in rehabilitative programs to which the prisoner is exposed at his original place of imprisonment. (*United States* ex rel. *Esola* v. *Groomes* (3d Cir. 1975) 520 F.2d 830, 833.)

---

[4]Attorney General contends *Reyes* was wrongly decided and Litke is not legally entitled to raise these issues following a guilty plea but points out a remand would result merely in Litke raising the same issues on appeal at a later time. Since *Reyes* permitted appeal after plea for the sole reason now urged by respondent, i.e., judicial economy (p. 532), we are not sure of what it is with which he disagrees. In any event, we accept the invitation.

■ Litke's removal from MCC on a handful of occasions when he was returned the same day frustrated none of the purposes.

Assuming arguendo, Litke falls within the ambit of section 1389, his rights have not been violated.

We read the provisions of the statute in total context. The dismissal sanctions of section 1389, article III, subdivision (d), and article IV, subdivision (e), do not apply so long as Litke is held either (1) in the temporary custody of the receiving state *or*, (2) *in federal custody "at the place for trial"* until disposition of all pending matters. (§ 1389, art. V, subd. (a).)

■ The obvious purpose of this section is to insure a confined prisoner proximity to court and counsel so as to not hamper his ability to receive full opportunity to defend, and speedy trial. Litke's detention in accordance with the option available in section 1389, article V, subdivision (a), provided these and was in full compliance with the detention options available.

Judgment affirmed.

Wiener, Acting P. J., and Lord, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 14, 1981.

*Assigned by the Chairperson of the Judicial Council.