Appellant, Willie Gillard, was indicted by the Bibb County, Alabama, Grand Jury in a two-count indictment for theft of property in the first degree and unauthorized use of a vehicle, in violation of §§ 13A-8-3 and 13A-8-11, Code of Alabama 1975, respectively. He was arraigned on August 19, 1983, and entered a plea of not guilty. On or about October 18, 1983, as a result of a federal conviction, he began serving a prison sentence at the United States Correctional Institution at Talladega, Alabama, and except for short periods of temporary state custody unrelated to this case, has remained in federal custody since that time. On or about March 13, 1984, appellant *Page 1324 
prepared a "Motion for Speedy Trial or for Dismissal of Charges" pertaining to the Bibb County indictment, and according to his testimony taken during a hearing on his motion to dismiss the indictment, he sent a copy to the clerk of the circuit court and the district attorney of said county. There is nothing in the record to indicate that they received such document. In addition to requesting a speedy trial, he asked in the alternative that the pending charges be dismissed and the detainer withdrawn. On or about October 12, 1984, the State of Alabama obtained temporary custody of appellant from the federal authorities and he was brought to Bibb County from the federal penitentiary for trial on the pending State indictment. The case action summary shows that the case was called for trial on October 15, 1984; that the State announced ready; and that appellant's counsel stated that he could not announce ready due to not having had sufficient time to confer with appellant. On October 17, 1984, the case was continued to November 26, 1984. Appellant and his counsel testified that at no time did they ask for a continuance, and that they were prepared to go to trial. On October 25, 1984, appellant was returned to federal custody without being tried and without disposal of the indictment. The reason for returning appellant to federal custody is not disclosed in the record. On December 18, 1984, appellant filed a petition for writ of habeas corpus in the Federal District Court for the Northern District of Alabama, seeking relief from the pending indictment in Bibb County on the ground that the State had violated the Uniform Mandatory Disposition of Detainers Act (§ 15-9-81, Code of Alabama 1975). A copy of this petition was filed with the Clerk of the Bibb County Circuit Court on December 18, 1984. The Federal District Court dismissed the petition on March 11, 1985, for want of jurisdiction. Pursuant to motion by the district attorney, an order was entered on January 29, 1985, by the Circuit Court of Bibb County ordering the federal authorities to surrender appellant to the sheriff of Bibb County for the purpose of returning him again to Bibb County for trial. This order was not complied with due to appellant's apparently being in the temporary custody of Jefferson County authorities as a result of an unrelated case. The reissuance of this order on March 21, 1985, obviously did not produce results. On motion of the district attorney, the order was again entered August 22, 1985, and this time appellant was transferred from federal custody at Talladega to the temporary custody of the State for the purpose of standing trial on the instant indictment. Appellant was again brought from Talladega to Bibb County and incarcerated in the Bibb County jail to await trial.
On April 5, 1985, appellant filed a motion to dismiss the indictment in the Circuit Court of Bibb County on the ground that the State had violated Article IV (e) of the Uniform Mandatory Disposition of Detainers Act because, while appellant was in the custody of federal authorities and serving a federal penitentiary sentence, the district attorney of Bibb County, pursuant to Article IV of the Act, requested and obtained temporary custody of appellant for disposition of the pending indictment in Bibb County, but the trial was not had, nor the indictment disposed of prior to his being returned to federal custody; therefore, appellant alleged, the indictment was due to be dismissed with prejudice in accordance with said Article IV (e). This motion was denied. Appellant was tried before a jury on September 9 and 10, 1985. Prior to submission of the case to the jury, the count of the indictment charging unauthorized use of a vehicle was withdrawn on motion of the State and the case went to the jury on the remaining count. The jury found appellant guilty of theft of property in the first degree as charged, and the trial court sentenced him as a habitual offender to life imprisonment in the penitentiary. Appellant appeals his conviction and raises two issues.
First, he contends that the trial court committed reversible error in denying his motion to dismiss the indictment with prejudice. *Page 1325 
The Alabama Legislature enacted the Uniform Mandatory Disposition of Detainers Act in 1978, adopting the Interstate Agreement on Detainers (Agreement). 1978 Ala. Acts 693, No. 590 (April 27, 1978); Ala. Code 1975, § 15-9-81. Congress enacted the Interstate Agreement on Detainers Act in 1970, joining the United States and the District of Columbia as parties to the Agreement. 18 U.S.C.A.App., §§ 1-2, page 585 (1985). The United States is a "state" for purposes of the Agreement. Agreement, Article II (a). At least forty-six states, including Alabama, are signatories. United States v. Mauro, 436 U.S. 340,98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); McCallum v. State, 407 So.2d 865
(Ala.Crim.App. 1981). The Agreement attempts to remedy the disadvantages and hardships imposed upon prisoners attendant to the use of detainers and to eliminate potential abuses of the detainer system. Article I. The Agreement provides the prisoner with a method of clearing detainers lodged against him. It further provides cooperative proceedings for temporary transfers of prisoners for purposes of trial on outstanding charges among the participating jurisdictions to aid such disposition. United States v. Dixon, 592 F.2d 329 (6th Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056
(1979); Morning v. State, 416 So.2d 780 (Ala.Crim.App. 1982). In either case, the provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated.United States v. Mauro, supra; United States v. Dixon, supra.
The central provisions of the Agreement are Article III and Article IV. Article III sets forth the procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. If a prisoner demands a speedy trial pursuant to the guidelines of Article III, the jurisdiction which filed the detainer is required to bring him to trial within the Article III (a) time limit. Failure to comply will result in a dismissal of the outstanding charges, with prejudice. Article III (d) also requires the disposition of all outstanding charges in a jurisdiction prior to the return of the prisoner to the original place of incarceration. Any charges left untried after the prisoner has been returned to the original place of incarceration will be dismissed with prejudice. United Statesv. Mauro, supra; United States v. Dixon, supra; People v.Reyes, 98 Cal.App.3d 524, 159 Cal.Rptr. 572 (1979); Boyd v.State, 51 Md. App. 197, 441 A.2d 1133, 1137, aff'd, 294 Md. 103,447 A.2d 871 (1982), and cases cited therein.
Article IV provides a means by which a prosecutor, who has lodged a detainer against a prisoner in another participating jurisdiction, can secure temporary custody of a prisoner for disposition of the outstanding charges against the prisoner. Once a prosecuting authority has gained temporary custody over a prisoner by a "written request" to the jurisdiction of incarceration (Art. IV (a)), two limitations are placed on the requesting prosecutor. Article IV (c) requires that trial must commence within 120 days of the prisoner's arrival in the requesting jurisdiction, unless a continuance is granted for good cause in open court with the prisoner or his counsel present. Article IV (e), which is sometimes referred to as the anti-shuttle or anti-shuffling provision of the Agreement, provides:
 "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V (e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."
Article V (e) merely provides that the prisoner shall be returned to the sending state at the earliest practicable time consonant with the purposes of the Agreement. The *Page 1326 
Agreement makes it clear that if a prosecuting jurisdiction takes the initiative to bring a prisoner, against whom it has lodged a detainer, from the jurisdiction of incarceration into its temporary custody for disposition of outstanding charges against the prisoner, the requesting jurisdiction must complete the prosecution before returning the prisoner to the jurisdiction of incarceration. United States v. Mauro, supra;United States v. Dixon, supra; In re Blake, 99 Cal.App.3d 1004,160 Cal.Rptr. 781 (1979); People v. Reyes, supra; State v.Moser, 445 So.2d 696 (Fla.App. 2 Dist. 1984); People v.Christensen, 102 Ill.2d 321, 465 N.E.2d 93 (1984); Webb v.State, 437 N.E.2d 1330 (Ind. 1982); Boyd v. State, supra;Commonwealth v. Diggs, 273 Pa. Super. 121, 416 A.2d 1119 (1979);Moore v. Whyte, 164 W. Va. 718, 266 S.E.2d 137 (1980). The mandatory language and stringent penalties of the Agreement require party states to adhere strictly to the compact's provisions. United States v. Eaddy, 595 F.2d 341 (6th Cir. 1979); State v. Moser, supra. The member states adopted the Agreement to promote the speedy disposition of outstanding charges and to mitigate the evils that resulted from shuttling prisoners to and from states that had lodged detainers. UnitedStates v. Mauro, supra; United States v. Dixon, supra.
In the instant case, appellant contends that, pursuant to Article IV (e) of the Agreement, the indictment pending against him in the Bibb County, Alabama, circuit court should have been dismissed because he was returned from temporary custody to federal custody, which was his original place of incarceration, while under a detainer, without disposition of the State charges outstanding against him.
The record is not clear as to the procedure the parties followed in implementing the Agreement. There is no direct evidence of the filing of a detainer with the federal authorities by the State of Alabama. Appellant makes reference to such a detainer in his motion for a speedy trial and in his brief. The existence of a detainer is not disputed by the State. In fact, the State adopts appellant's statement of the case and facts in its brief. It would appear that by initiating a motion for speedy trial, appellant was attempting to proceed under Article III of the Agreement. If appellant initiated the request for disposition of the detainer under Article III, he apparently failed to fully comply with the provisions of the Agreement, or if he did, the record fails to disclose such compliance. There is no showing that the inmate's request was sent by registered or certified mail or that it was accompanied by a certificate of the appropriate official having custody of him. The record fails to disclose that the prosecuting authority or the appropriate court in the prosecuting officer's jurisdiction received appellant's motion for a speedy trial. We have held that there must be strict compliance by the prisoner with the requirements of Article III. Whitley v. State,392 So.2d 1220 (Ala.Crim.App. 1980), cert. denied, 392 So.2d 1225
(Ala. 1981). Under Article III (b), a prisoner need only give or send a written request for final disposition of an outstanding detainer "to the warden, commissioner of corrections or other official having custody of him" in order to completely fulfill his sole requirement under the Agreement.McCallum v. State, supra. However, when a prisoner chooses to by-pass the simple procedure provided in Article III (b), and attempts to deal directly with officials in the receiving state, he must satisfy the additional requirements of the Agreement which would normally be executed by officers in the sending state. McCallum v. State, supra; Whitley v. State, supra; State v. Grizzell, 584 S.W.2d 678 (Tenn.Cr.App. 1979). If appellant were proceeding under Article III and failed to provide the required certificate and send the request by registered or certified mail, he would fail to invoke the provisions of the Agreement.
If the State of Alabama, in the first instance, initiated the request for disposition of the detainer under Article IV, the *Page 1327 
record does not disclose it. The record on appeal is silent as to what process caused the federal authorities to first surrender appellant's custody in October 1984 to the Bibb County sheriff; however, it is unlikely that the federal authorities would deliver temporary custody of appellant to the sheriff of Bibb County without a proper request. The State does not deny that such a request was made. It is important to note that at all times while appellant's motion to dismiss the indictment was being considered in the trial court, the State raised no defense that the Agreement was not applicable because of a failure to lodge a proper detainer with the federal authorities or that the proper measures had not been taken to trigger the Agreement. In fact, the position of the State in arguments to the trial court, and in brief on appeal, is that Article IV of the Agreement was applicable. The only position taken by the State through the district attorney at trial and the Attorney General on appeal was that the State had complied with Article IV. The State, in effect, argues that it made a good faith effort to comply with the Agreement, that the delay was partly due to the failure of the federal authorities to cooperate, and that the trial court had the right to continue the case under Article IV (c). In supplemental brief, the State concedes that Article IV (e) is applicable to appellant in this case, and requests that we remand the case to the lower court for a hearing to determine why appellant was returned to federal custody in October 1984 prior to trial. The State contends that such information may disclose a waiver by appellant of his rights under the Agreement. There is no question that appellant was transferred from federal custody to the temporary custody of the State for disposition of the pending charges in Bibb County in October 1984, and in view of the position taken by the State, we must assume that temporary custody of appellant was properly obtained pursuant to the provisions of Article IV. Even though the record is not clear as to the procedures followed in bringing the Agreement into play, it does not matter, since the State concedes that the Agreement applies, and particularly Article IV (e) thereof. It is the function of the parties and not of the court to formulate the issues. Whirley v. State, 481 So.2d 1154 (Ala. 1986), concurring opinion of Justice Jones.
To summarize, appellant was indicted July 25, 1983, in Bibb County, Alabama. On or about October 12, 1984, the United States delivered temporary custody of appellant to the State of Alabama for the purpose of standing trial on the pending charges. Appellant was not tried, but was returned by the State of Alabama to the custody of the United States on October 25, 1984. His return to his original place of incarceration prior to his trial was not a return consonant with the purposes of the Agreement. We are inclined toward the majority view that the rights afforded a prisoner under the Agreement do not rise to the level of constitutionally guaranteed rights and can be waived, United States v. Eaddy, supra; United States v.Scallion, 548 F.2d 1168 (5th Cir. 1977), cert. denied,436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978); United States v.Ford, 550 F.2d 732 (2d Cir. 1977), aff'd sub nom. United Statesv. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978);State v. Moser, supra; State v. Grizzell, 399 So.2d 1091
(Fla.Dist.Ct. 1981); Webb v. State, supra. However, we find that no express or implied waiver of the anti-shuffling provisions appears in the lower court record. In light of the record before us, the mandatory nature of the statute, and the testimony of appellant and his counsel that they never asked for a continuance and were ready for trial, we reject consideration of the Attorney General's request that we remand the case for an evidentiary hearing to determine the reasons why appellant was returned to federal custody prior to trial.
Accordingly, we hold that the State violated Article IV (e), by returning appellant *Page 1328 
to the United States government prior to trial, and that such violation requires dismissal of the indictment with prejudice. The trial court committed reversible error in denying appellant's motion for dismissal.
In view of our holding above, we find it unnecessary to address the remaining issue.
The judgment of the trial court is reversed and the case remanded with instructions that the conviction and sentence be set aside, and the indictment dismissed with prejudice.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All Judges concur.