McMILLAN, Judge.
This appeal is based upon the trial court’s refusal to extradite the appellee to the temporary custody of the State of Tennessee, pursuant to § 15-9-81 et seq., Code of Alabama 1975 (Uniform Mandatory Disposition of Detainers Act).
The appellee, Gerónimo Torres Hill, is presently incarcerated within the Alabama correctional system. Although the record before us does not unequivocally establish that a detainer was placed on the appellee by the State of Tennessee, it does reveal that the appellee was extradited to Tennessee on July 21, 1991, for trial on charges pending there. On July 22, 1991, two attorneys with the public defender’s office of the State of Tennessee were appointed to represent the appellee. During his initial appearance, settlement negotiations were unsuccessful. The State of Tennessee then requested a speedy trial. The appellee’s Tennessee attorneys, however, requested a continuance of the trial until January 1992, due to the “high profile” nature of the case. The trial was then tentatively set for December 1991.
On August 5, 1991, the appellee, allegedly unbeknownst to the prosecuting agents of Tennessee, was returned to Alabama by a Tennessee sheriffs deputy. On November 15, 1991, the appellee received notice from his appointed counsel in Tennessee that his trial was set for December 16 and 17, 1991. On November 26, 1991, the appellee moved to dismiss the indictment based upon an alleged violation of the Uniform Mandatory Disposition of Detainers Act. More particularly, he alleged that the State of Tennessee violated the “anti-shuffling” provisions of that agreement, Article IV(e), when it returned him to Alabama. Subsequent thereto, the State of Tennessee issued a second detainer requesting extradition on December 11,1991. A pre-transfer hearing was held in Montgomery County Circuit Court before the Honorable Charles Price. At that hearing, the State of Alabama assisted the State of Tennessee in arguing that, because the appellee was granted a continuance of his trial date, he waived the rights afforded to him under Article IV(c) of the Uniform Mandatory Disposition of Detainers Act (right to speedy trial), and because he was returned to Alabama at the request of his appointed Tennessee attorneys, he waived the protection afforded him under Article IV(e) of the Act (anti-shuffling prohibition).
In support of the State’s argument that the appellee waived his right to a speedy trial, the State offered the testimony of James White, the chief deputy district attorney for the Twenty-second Judicial Circuit in Tennessee, who read, without objection, the record and transcript of the July 22 proceedings, wherein the appellee’s appointed counsel, in the presence of the appellee, asked for *1378 and received a continuance. With respect to the State’s argument that the appellee waived the protection of the anti-shuffling provision when he was returned to Alabama at the request of his Tennessee attorney, the State did not present any substantive evidence in support thereof.
In response, the appellee testified that he was not aware that his Tennessee attorneys had asked for a continuance of his trial date. He further testified that he never requested to be returned to Alabama, and that he never authorized his Tennessee attorneys to request such a transfer.
The trial court, in its order, held:
“The State of Alabama filed a petition on behalf of the State of Tennessee to extradite the defendant to Tennessee to face criminal charges. The Court held a hearing at which time the defendant and his attorney were present along with Mr. Turner from the Montgomery County District Attorney’s office and a representative from the State of Tennessee.
“The testimony was that the defendant had been taken to Tennessee to answer the charges but was returned to the Alabama Board of Corrections before the charges were disposed of. Further, the charges were not disposed of within the time set out in the Uniform Mandatory Disposition of Detainers Act. (§ 15-9-81, Alabama State Code.)
“The Court has carefully considered the evidence and arguments of the parties and is of the opinion that the petition for extradition filed by the State should be denied.
“It is, further, ordered that the Board of Corrections remove from its records the detainer placed against the defendant.”
The State requests that we remand this case to the trial court for a hearing to determine why the appellant was returned to Alabama. The State contends that such information may disclose a waiver by the appellee of his rights under the Act.
A concise summary of the Uniform Mandatory Disposition of Detainers Act is found in Gillard v. State, 486 So.2d 1323, 1325-26 (Ala.Cr.App.1986), wherein this Court stated:
“The Alabama Legislature enacted the Uniform Mandatory Disposition of Detain-ers Act in 1978, adopting the Interstate Agreement on Detainers (Agreement). 1978 Ala.Acts 693, No. 590 (April 27,1978); Ala.Code 1975, § 15-9-81. Congress enacted the Interstate Agreement on Detain-er Act in 1970, joining the United States and the District of Columbia as parties to the Agreement. 18 U.S.C.AApp., §§ 1-2, page 585 (1985). The United States is a ‘state’ for purposes of the Agreement. Agreement, Article 11(a). At least forty-six states, including Alabama, are signatories. United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); McCallum v. State, 407 So.2d 865 (Ala.Crim.App.1981). The Agreement attempts to remedy the disadvantages and hardships imposed upon prisoners attendant to the use of detainers and to eliminate potential abuses of the detainer system. Article I. The Agreement provides the prisoner with a method of clearing detainers lodged against him. It further provides cooperative proceedings for temporary transfers of prisoners for purposes of trial on outstanding charges among the participating jurisdictions to aid such disposition. United States v. Dixon, 592 F.2d 329 (6th Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); Morning v. State, 416 So.2d 780 (Ala.Crim.App.1982). In either case, the provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated. United States v. Mauro, supra; United States v. Dixon, supra.
“The central provisions of the Agreement are Article III and Article IV. Article III sets forth the procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. If a prisoner demands a speedy trial pursuant to the guidelines of Article III, the jurisdiction which filed the detainer is required to bring him to trial within the Article 111(a) time limit. Failure to comply will result in a dismissal of the out *1379 standing charges, with prejudice. Article 111(d) also requires the disposition of all outstanding charges in a jurisdiction prior to the return of the prisoner to the original place of incarceration. Any charges left untried after the prisoner has been returned to the original place of incarceration will be dismissed with prejudice. United States v. Mauro, supra; United States v. Dixon, supra; People v. Reyes, 98 Cal.App.3d 524, 159 Cal.Rptr. 572 (1979); Boyd v. State, 51 Md.App. 197, 441 A.2d 1133,1137, aff'd, 294 Md. 103, 447 A.2d 871 (1982), and cases cited therein.
“Article IV provides a means by which a prosecutor, who has lodged a detainer against a prisoner in another participating jurisdiction, can secure temporary custody of a prisoner for disposition of the outstanding charges against the prisoner. Once a, prosecuting authority has gained temporary custody over a prisoner by a “written request’ to the jurisdiction of incarceration (Art. IV(a)), two limitations are placed on the requesting prosecutor. Article IV(c) requires that trial must commence within 120 days of the prisoner’s arrival in the requesting jurisdiction, unless a continuance is granted for good cause in open court with the prisoner or his counsel present. Article IV(e), which is sometimes referred to as the anti-shuttle or anti-shuffling provision of the Agreement, provides:
“ ‘If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner’s being re-toned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.’
“Article V(e) merely provides that the prisoner shall be returned to the sending state at the earliest practicable time consonant with the purposes of the Agreement. The Agreement makes it clear that if a prosecuting jurisdiction takes the initiative to bring a prisoner, against whom it has lodged a detainer, from the jurisdiction of incarceration into its temporary custody for disposition of outstanding charges against the prisoner, the requesting jurisdiction must complete the prosecution before returning the prisoner to the jurisdiction of incarceration. United States v. Mauro, supra; United States v. Dixon, supra; In re Blake, 99 Cal.App.3d 1004, 160 Cal.Rptr. 781 (1979); People v. Reyes, supra; State v. Moser, 445 So.2d 696 (Fla.App. 2 Dist.1984); People v. Christensen, 102 Ill.2d 321 [80 Ill.Dec. 302], 465 N.E.2d 93 (1984); Webb v. State, 437 N.E.2d 1330 (Ind.1982); Boyd v. State, supra; Commonwealth v. Diggs, 273 Pa.Super. 121, 416 A.2d 1119 (1979); Moore v. Whyte, 164 W.Va. 718, 266 S.E.2d 137 (1980). The mandatory language and stringent penalties of the Agreement require party states to adhere strictly to the compact’s provisions. United States v. Eaddy, 595 F.2d 341 (6th Cir.1979); State v. Moser, supra. The member states adopted the Agreement to promote the speedy disposition of outstanding charges and to mitigate the evils that resulted from shuttling prisoners to and from states that had lodged detain-ers. United States v. Mauro, supra; United States v. Dixon, supra.”
The State is correct in its assertion that the appellee effectively waived the 120-day provision in Article IV(c) when he requested and received a continuance. This Court, in Gillard, supra, at 1327, stated:
“We are inclined toward the majority view that the rights afforded a prisoner under the Agreement do not rise to the level of constitutionally guaranteed rights and can be waived. United States v. Eaddy, supra; United States v. Scallion, 548 F.2d 1168 (5th Cir.1977), cert. denied, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978); United States v. Ford, 550 F.2d 732 (2d Cir.1977), aff'd, sub nom. United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); State v. Moser, supra; State v. Grizzell, 399 So.2d 1091 (Fla.Dist.Ct.1981); Webb v. State, supra.”
See also Glover v. State, 599 So.2d 79 (Ala.Cr.App.1991).
With respect to the State’s “anti-shuffling” argument, it is well recognized that the rights provided the prisoner by Article IV(e) *1380 are waived by a prisoner’s request to return and his subsequent return to his original place of imprisonment. Webb v. Keohane, 804 F.2d 413 (7th Cir.1986). See People v. Browning, 104 Mich.App. 741, 306 N.W.2d 326, 334-35 (1981) (wherein that court held that, notwithstanding the fact that a stipulation signed by the prisoner and his attorney waived the defendant’s right to trial within 180 days under Article III of the Act, and his right to trial within 120 days under Article IV of the Act, state charges upon which a detainer was lodged were properly dismissed where prisoner, who had been turned over to state authorities for trial, was returned to his original place of federal imprisonment prior to trial.)
Here, the states of Alabama and Tennessee had every opportunity to produce evidence that the appellee voluntarily returned to Alabama at the request of his state-appointed public defenders. The only evidence presented, however, was the testimony of James White, chief deputy district attorney from Tennessee, whose testimony on this issue was riddled with hearsay, speculation, and conjecture. The State failed to produce any evidence concerning the reasons for, or circumstances of, the transfer to Alabama. The State’s request to remand this case for further proceedings is denied. Ex parte Hergott, 588 So.2d 911 (Ala.1991). The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.